OPINION
 

 By the Court,
 

 Hardesty, J.:
 

 On his day off, respondent David Murphy, at his employer’s request, delivered equipment from his employer’s construction yard to his employer’s job site. After departing from the job site, he was injured in an automobile accident. In this opinion, we consider whether the injuries of an employee who, like Murphy, is involved in a vehicular accident while on the return journey of a special errand undertaken at the employer’s request, arise out of and in the course of employment, entitling the employee to workers’ compensation benefits.
 

 In so doing, we adopt the street-risk rule, which provides that, when an employee is required to drive as a component of employment, the risks and hazards associated with the roadways are inci
 
 *281
 
 dent to that employment, and thus injuries sustained due to risks associated with those roadways arise out of the employment. We also clarify that our workers’ compensation jurisprudence includes an employee’s return journey within the special errand exception to the going and coming rule, which provides that, even though going and coming from work generally is not in the course of employment, an employee is acting within the course of employment when completing a “special errand” for the employer. Thus, depending upon the facts, an employee’s injuries sustained in a vehicular accident during the return journey of a special errand may arise out of and in the course of employment.
 

 FACTS
 

 In August 2000, respondent David Murphy was employed as a grout pump operator by appellant Bob Allyn Masonry. Although Murphy was not scheduled to work on the Saturday in question, his supervisor asked him to deliver equipment from Bob Allyn Masonry’s construction yard to one of its job sites. Murphy agreed, performing the errand while driving a truck owned by Bob Allyn Masonry that he was authorized to take home on weekends. On what would otherwise be his day off, Murphy drove from his residence to Bob Allyn Masonry’s construction yard to pick up the equipment that he was asked to deliver. From the construction yard, Murphy drove to the job site. After delivering the equipment to the job site, Murphy began driving to a personal side job. Approximately two miles from Bob Allyn Masonry’s job site, Murphy was seriously injured in an automobile accident.
 

 Murphy filed a claim with Bob Allyn Masonry for workers’ compensation benefits, but appellant S & C Claims Services, Inc., the workers’ compensation claims administrator, denied Murphy’s claim, based on its conclusion that Murphy had not established that his injuries arose out of and in the course of his employment. When Murphy challenged the claim denial, the parties agreed to proceed directly to a hearing before the appeals officer.
 

 At the hearing, Murphy’s supervisor, Ronald Allyn, testified that Bob Allyn Masonry did not pay employees for their travel time to or from work. Allyn also testified that although he did not remember specifically, he guessed that because Murphy’s performance of the errand was done on a Saturday and would therefore warrant overtime pay, Murphy would have been paid only from the time he arrived at the construction yard to the time that he left the job site after delivering the equipment.
 

 After considering the evidence and the parties’ arguments, the appeals officer affirmed S & C Claims Services’ denial of Murphy’s claim, finding that, because Murphy’s injuries occurred after he completed the special delivery errand, the injuries did not arise out of and in the course of his employment, as required under NRS
 
 *282
 
 616C. 150(1). Murphy petitioned the district court for judicial review. Initially, the district court determined that the appeals officer’s decision inadequately addressed the special errand exception’s applicability, specifically, the point when Murphy ceased performing the special errand. The district court thus remanded the matter to the appeals officer for a determination, under the special errand exception to the coming and going rule, of when the delivery task ended and the side job began.
 

 Thereafter, the appeals officer issued an order of clarification, stating that this court’s decision in
 
 Mitchell v. Clark County School
 
 District
 
 [1]
 
 rendered the question concerning the applicability of the special errand exception irrelevant. The appeals officer explained that, even assuming the applicability of the special errand exception, Murphy failed to establish, under
 
 Mitchell,
 
 that his injuries arose out of his employment because Murphy simply argued that ‘ ‘but for’ ’ the equipment delivery task, he would not have been in the accident’s location — a test expressly rejected by this court in
 
 Mitchell.
 

 Nonetheless, the district court granted the petition for judicial review and reversed the appeals officer’s decision. The district court concluded that the appeals officer erred as a matter of law by determining that, under
 
 Mitchell,
 
 Murphy’s injuries did not arise out of his employment. The court further concluded that Murphy was performing a special errand for Bob Allyn Masonry at the time of the accident and that he was, therefore, entitled to compensation for his injuries. Bob Allyn Masonry and S & C Claims Services (collectively Bob Allyn Masonry) appeal.
 

 DISCUSSION
 

 In reviewing administrative decisions, “this court’s role is ‘identical to that of the district court: to review the evidence presented to the agency in order to determine whether the agency’s decision was arbitrary or capricious and was thus an abuse of the agency’s discretion.’ ”
 
 [2]
 
 This court is limited to the record before the agency and cannot substitute its judgment for that of the agency on issues concerning the weight of the evidence on questions of fact.
 
 [3]
 
 This court does, however, review questions of law de novo.
 
 [4]
 

 
 *283
 
 Under NRS 616C. 150(1), to receive workers’ compensation benefits, an injured employee must “establish by a preponderance of the evidence that the employee’s injury arose out of and in the course of his employment.’ ’ The statute contemplates two separate inquiries: whether the injury “arose out of” the employment and whether the injury arose “in the course of” the employment. The parties dispute whether Murphy met his burden on both inquiries.
 

 Murphy’s injuries might have arisen out of his employment
 

 We recently reiterated that a claimant seeking to establish that his injury arose out of his employment must demonstrate “‘a causal connection between the injury and the employee’s work,’ in which ‘the origin of the injury is related to some risk involved within the scope of employment.’ ’ ’
 
 [5]
 
 In that matter,
 
 Mitchell v. Clark County School District,
 
 an appeals officer denied compensation because the employee failed to demonstrate that her injury arose out of her employment.
 
 [6]
 
 The employee fell down a flight of stairs while at work but could not identify what caused her fall.
 
 [7]
 
 Nevertheless, the employee argued that her injury arose out of her employment simply because she fell at work and “staircases are inherently dangerous,” and “but for” being at work, she would not have fallen down the staircase.
 
 [8]
 

 In
 
 Mitchell,
 
 we rejected the employee’s argument because Nevada law generally requires employees to show a causal connection between the injury and the work or workplace conditions. In doing so, we considered and rejected the “positional-risk” test used in some other jurisdictions to determine whether an injury arose out of employment.
 
 [9]
 
 The positional-risk test establishes a “but for” test, resulting in compensability under the “arose out of” prong “even if ‘the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the particular time when he or she was injured by some neutral force.’ ”
 
 [10]
 
 Noting the positional-risk test’s inconsistency with NRS 616C.150(l)’s requirements and Nevada’s statutory rule requiring neutral construction of the Nevada Industrial In
 
 *284
 
 surance Act, we rejected the positional-risk test and reaffirmed that an employee must show a causal connection between his injury and risks involved within the scope of his employment.
 
 [11]
 

 Here, Bob Allyn Masonry argues that, under the principles discussed in
 
 Mitchell
 
 and
 
 Mitchell’s
 
 rejection of the “but for” positional-risk test, Murphy’s claim must be denied. Bob Allyn Masonry points out that, in Mitchell, we declined to adopt a test that required a workers’ compensation claimant to demonstrate only that the claimant sustained injuries on the job.
 
 [12]
 
 Instead, we reiterated that the injuries must be sufficiently causally connected to risks of employment.
 
 [13]
 
 Thus, Bob Allyn Masonry asserts, because Murphy’s injuries were not connected to risks incident to his employment as a grout pump operator, but rather were inflicted by an outside force when Murphy happened to be in a place where, “but for” his employment obligations, he would not have been, Murphy may not obtain workers’ compensation benefits. We disagree.
 

 Several jurisdictions have recognized that when an employee is required to use streets and highways to carry out employment duties, those streets and highways are considered the workplace.
 
 [14]
 
 Thus, if an employee’s injuries are caused by a risk associated with traveling the streets and highways, those injuries “arise out of” employment. This principle, that an employee’s injuries are sufficiently connected to a risk of employment when the employee is required to use the streets and highways to perform employment duties and the injuries are caused by a risk inherent in using those streets and highways, is commonly referred to as the street-risk rule. Although this court has not previously had occasion to consider the street-risk rule, it is a test widely used in other jurisdictions to determine whether an injury sustained from a risk encountered on the roadways may be characterized as arising out of employment.
 
 [15]
 

 Over time, other jurisdictions have developed and applied three variations of the street-risk rule. At its inception, the rule required an employee to demonstrate that his injury was caused by a risk
 
 *285
 
 both peculiar in nature to the employment and increased in degree by the employment.
 
 [16]
 
 The rule’s purpose was to ensure that claimants were compensated for injuries resulting from risks to which the general public was not exposed. This so-called ‘ ‘peculiar and increased street-risk rule” is now considered obsolete
 
 [17]
 
 because courts realized that employees could demonstrate that their injuries resulted from risks not common to the general public solely by showing that the risk was one increased in degree by the employment.
 
 [18]
 

 Those courts developed the “increased street-risk rule,” under which an employee must demonstrate that his injury was caused by a risk to which his employment exposed him with greater frequency, as compared to the general public’s exposure to the risk.
 
 [19]
 
 Under the increased street-risk rule, the character of the risk need not be peculiar to the employment; the employment simply must increase the employee’s exposure to that risk.
 
 [20]
 

 More recently, numerous courts have adopted a relaxed street-risk rule, referred to as the “actual street-risk rule,” which requires an employee to establish only that his injury resulted from a street risk occasioned by his employment, regardless of whether the employee’s exposure to the risk was frequent or only occasional.
 
 [21]
 
 Under the actual street-risk rule, an injury is compensable so long as “(1) the employee’s ‘duties . . . require . . . [a] . . . presence upon the public streets,’
 
 and
 
 (2) the ‘injury arose from an actual risk of that presence upon the streets.’ ’ ’
 
 [22]
 

 Having considered the types of street-risk rules outlined above, as well as Nevada’s prior jurisprudence concerning the meaning of “arise out of” employment and the legislative mandate requiring neutral construction of workers’ compensation statutes,
 
 [23]
 
 we now adopt the actual street-risk rule. The actual street-risk rule accords with the concept reaffirmed in
 
 Mitchell
 
 that an employee must show a causal connection between his injury and employment risks
 
 *286
 
 to establish that his injury arose out of the employment.
 
 [24]
 
 When an employee is required to use the streets and highways to carry out his employment obligations, the risks of those streets and highways are thereby converted to risks of employment. If the employee can demonstrate that his injury was occasioned by those risks, his injury will be deemed to have arisen out of the employment.
 

 Here, as part of his employment duties, Murphy’s employer asked him to deliver equipment from the construction yard to a job site, a task that presumably required him to use the streets and highways. It follows, then, that under the actual street-risk rule, the risks of those streets and highways became risks of Murphy’s employment. Thus, so long as Murphy’s injuries arose out of risks inherent to the streets and highways while he was using them to carry out his employment duties, those injuries arose out of his employment. If, on the other hand, Murphy’s injuries were not caused by a risk inherent to his use of the streets and highways, but rather by some other, nonindustrial risk, then his injuries cannot be said to have arisen out of his employment, and he is not entitled to benefits.
 
 [25]
 

 Although, in this case, the risks inherent to streets and highways were employment risks, and thus, Murphy’s injuries might have arisen out of his employment, the inquiry cannot end here. To determine whether Murphy is entitled to obtain workers’ compensation benefits, it must also be considered whether the accident occurred in the course of his employment.
 

 Murphy’s injuries might have arisen in the course of his employment
 

 It is well established that employers are not liable for injuries sustained by employees due to the hazards of daily living.
 
 [26]
 
 Accordingly, when determining whether an injury that is sustained outside of the actual period of employment or off of the employer’s premises nonetheless arose in the course of employment, we consider “whether the employee [was] in the employer’s control.”
 
 [27]
 
 To
 
 *287
 
 ensure that employers are not held liable for injuries sustained when an employee is outside of the employer’s control, this court has adopted the going and coming rule, which originated in tort law and ‘ ‘precludes] compensation for most employee injuries that occur during travel to or from work.’ ’
 
 [28]
 
 This court recognizes multiple exceptions to the going and coming rule,
 
 [29]
 
 however, and the exception at issue in this case is the special errand exception.
 
 [30]
 
 While we have previously applied the special errand exception to the going and coming rule in the tort law context,
 
 [31]
 
 we now expressly approve that exception’s use in the workers’ compensation context. Under the special errand exception, injuries that are normally exempted from coverage on the ground that they did not arise in the course of employment are brought within the scope of coverage if they occur while the employee is in transit to or from the performance of an errand outside the employee’s normal job responsibilities.
 
 [32]
 

 We have previously recognized that the special errand exception applies when an employee sustains an injury while
 
 traveling to
 
 perform a special errand.
 
 [33]
 
 We have not, however, had occasion to recognize the special errand exception’s application in instances when, as in this case, the employee asserts that he sustained his injury while
 
 returning from
 
 the performance of a special errand.
 

 Other jurisdictions have recognized that the special errand exception includes the return journey. For instance, in
 
 Bengston
 
 v.
 
 Greening,
 
 the Minnesota Supreme Court affirmed an award of compensation when an employee was called into work on her day off, worked for an hour, returned home, and slipped and fell while crossing a sidewalk owned by her and her husband.
 
 [34]
 
 The court noted that the special errand exception “obviously must cover the return journey as well as the outgoing travel.”
 
 [35]
 
 Thus, the court held that the fact that the injury occurred at the return end of the
 
 *288
 
 journey, while the employee was walking to her house, did not bar coverage: “The errand for the employer was the occasion of her leaving the house and returning to it.”
 
 [36]
 
 Likewise, in
 
 Cochran Electric Co. v. Mahoney,
 
 the Court of Appeals of Washington affirmed an award of death benefits to the surviving spouse of an employee who, on his day off, took his employer’s van to be serviced and was involved in a fatal accident while riding his bicycle home from the garage.
 
 [37]
 
 The court explained that an injury sustained on a return journey is compensable where “ ‘the trouble and time of making the journey ... is itself sufficiently substantial to be viewed as an integral part of the service itself.’ ’ ’
 
 [38]
 

 Taking into consideration the reasoning of these jurisdictions, we now clarify that just as injuries sustained while traveling to perform a special errand arise in the course of employment, so too do injuries sustained when returning from the performance of the special errand. But an employer’s liability certainly cannot extend indefinitely beyond the performance of a special errand. It is for the fact-finder to determine, taking into account the totality of the circumstances in each individual case, when the employee ceased returning from the special errand and resumed a journey solely personal in nature. In making this determination, the appeals officer should consider whether the location at which the injuries occurred was on a portion of the roadway that the employee would not have otherwise been if he had not been performing the special errand. An injury will not be compensable if it is sustained after the employee has resumed the personal portion of his journey, as indicated by the employee’s location at the time of the accident on a portion of the roadway where the employee would have been traveling anyway to perform a task solely personal in nature. Injuries sustained after the employee is no longer returning from the special errand do not fall under its exception and are thus noncompensable under the going and coming rule.
 

 In this case, a question of fact exists concerning when Murphy’s special errand ended. Murphy contends that he was injured while returning from the performance of the special errand. Nonetheless, the appeals officer concluded that the special errand ended with the delivery of the equipment. The appeals officer, however, had no opportunity to take into consideration our recognition of the return journey as part of the special errand exception. Accordingly, we conclude that the appeals officer should reconsider this matter and
 
 *289
 
 determine whether Murphy sustained his injuries while returning from the performance of the special errand or if, at the time of the injuries, he had resumed the route of his personal journey.
 
 [39]
 

 CONCLUSION
 

 We conclude that questions of fact exist regarding whether Murphy’s injuries arose out of and in the course of his employment. To obtain workers’ compensation benefits, Murphy must establish a causal connection between his injuries and the risks of his employment,
 
 i.e.,
 
 the risks of the street that Murphy’s employment caused him to face. Further, while we conclude that the special errand exception encompasses both outgoing travel and a return journey, factual issues remain regarding whether Murphy’s injuries were sustained during his return journey or after resuming a personal journey.
 

 Accordingly, we reverse the district court’s order granting judicial review, and we remand this matter with instructions that the district court, in turn, remand the matter to the appeals officer. On remand, the appeals officer should (1) determine whether Murphy has established a causal connection between his injuries and risks incident to his employment, and (2) determine when Murphy ceased performing the special errand and resumed a journey solely personal in nature, taking into account the considerations set forth in this opinion and the totality of the circumstances in the case.
 

 Parraguirre and Douglas, JJ., concur.
 

 [1]
 

 121 Nev. 179, 111 P.3d 1104 (2005).
 

 [2]
 

 Weaver v. State, Dep’t of Motor Vehicles,
 
 121 Nev. 494, 498, 117 P.3d 193, 196 (2005) (quoting
 
 United Exposition Service Co. v. SIIS,
 
 109 Nev. 421, 423, 851 P.2d 423, 424 (1993)).
 

 [3]
 

 Id.
 

 [4]
 

 MGM Mirage
 
 v.
 
 Cotton,
 
 121 Nev. 396, 398, 116 P.3d 56, 57 (2005).
 

 [5]
 

 Mitchell
 
 v.
 
 Clark County Sch. Dist.,
 
 121 Nev. 179, 182, 111 P.3d 1104, 1106 (2005) (quoting
 
 Rio Suite Hotel & Casino
 
 v.
 
 Gorsky,
 
 113 Nev. 600, 604, 939 P.2d 1043, 1046 (1997)).
 

 [6]
 

 Id.
 
 at 182, 111 P.3d at 1106.
 

 [7]
 

 Id.
 
 at 180, 111 P.3d at 1105.
 

 [8]
 

 Id.
 
 at 181-82, 111 P.3d at 1106.
 

 [9]
 

 Id.
 
 at 183, 111 P.3d at 1106-07.
 

 [10]
 

 Id.
 
 at 182-83, 111 P.3d at 1106 (quoting 1 Arthur Larson & Lex K. Larson,
 
 Larson’s Workers’ Compensation Law
 
 § 3.05, at 3-6 (2004)).
 

 [11]
 

 121 Nev. at 183, 111 P.3d at 1107 (citing NRS 616A.010, which requires neutral construction of workers’ compensation statutes).
 

 [12]
 

 121 Nev. at 182-83, 111 P.3d at 1106-07.
 

 [13]
 

 Id.
 
 at 182, 111 P.3d at 1106.
 

 [14]
 

 Larke v. John Hancock Mut. Life Ins. Co.,
 
 97 A. 320, 321 (Conn. 1916);
 
 Thornton
 
 v.
 
 Hartford Accident & Indemnity Co.,
 
 32 S.E.2d 816, 820 (Ga. 1945);
 
 Bachman
 
 v.
 
 Waterman,
 
 121 N.E. 8, 9 (Ind. App. 1918).
 

 [15]
 

 See Kuharski v. Bristol Brass Corporation,
 
 46 A.2d 11, 12 (Conn. 1946);
 
 Bachman,
 
 121 N.E. at 9;
 
 Beaudry
 
 v.
 
 Watkins,
 
 158 N.W. 16, 16 (Mich. 1916).
 

 [16]
 

 1 Arthur Larson & Lex K. Larson,
 
 Larson’s Workers’ Compensation Law
 
 § 6.02, at 6-2 (2007).
 

 [17]
 

 Id.
 

 [18]
 

 Id.
 
 § 6.03, at 6-3.
 

 [19]
 

 Id.
 

 [20]
 

 Id.
 

 [21]
 

 Id.
 
 § 6.04, at 6-4.
 

 [22]
 

 Marketing Profiles, Inc. v. Hill,
 
 425 S.E.2d 546, 548 (Va. Ct. App. 1993) (alterations in original) (quoting
 
 Sentara Leigh Hosp.
 
 v.
 
 Nichols,
 
 414 S.E.2d 426, 428 (Va. Ct. App. 1992)).
 

 [23]
 

 See
 
 NRS 616A.010(4).
 

 [24]
 

 121 Nev. 179, 182, 111 P.3d 1104, 1106 (2005).
 
 See Hill,
 
 425 S.E.2d at 548 (explaining that the actual street-risk rule is consistent with jurisprudence rejecting the positional-risk test because, unlike the “but for” conclusion required by the positional-risk test, the actual street-risk rule requires an employee to show a causal connection between his injuries and a risk inherent in using the streets).
 

 [25]
 

 For example, Murphy’s medical records reveal the existence of a brain tumor that his treating physician indicated “may have been the cause of his accident with an acute obstruction, although it is hard to tell.”
 

 [26]
 

 See MGM Mirage
 
 v.
 
 Cotton,
 
 121 Nev. 396, 399-400, 116 P.3d 56, 58 (2005).
 

 [27]
 

 Id.
 
 at 399, 116 P.3d at 58.
 

 [28]
 

 Id.
 

 [29]
 

 Id.
 
 at 400, 116 P.3d at 58 (premises-related exception);
 
 Tighe
 
 v.
 
 Las Vegas Metro. Police Dep’t,
 
 110 Nev. 632, 635-36, 877 P.2d 1032, 1035 (1994) (distinct benefit to employer exception and police officer exception);
 
 Crank v. Nev. Indus. Comm’n,
 
 100 Nev. 80, 82, 675 P.2d 413, 414 (1984) (travel time exception);
 
 D & C Builders v. Cullinane,
 
 98 Nev. 67, 69-70, 639 P.2d 544, 546 (1982) (dual purpose journey exception);
 
 National Convenience Stores v. Fantauzzi,
 
 94 Nev. 655, 658, 584 P.2d 689, 692 (1978) (special errand exception).
 

 [30]
 

 Fantauzzi,
 
 94 Nev. at 658, 584 P.2d at 691-92 (imposing vicarious liability on employer through application of the special errand rule).
 

 [31]
 

 See id.
 

 [32]
 

 Id.
 
 at 658, 584 P.2d at 692.
 

 [33]
 

 See id.
 
 at 658-59, 584 P.2d at 692.
 

 [34]
 

 41 N.W.2d 185, 186 (Minn. 1950).
 

 [35]
 

 Id.
 

 [36]
 

 Id.
 

 [37]
 

 121 P.3d 747, 749 (Wash. Ct. App. 2005).
 

 [38]
 

 Id.
 
 at 751 (quoting
 
 Belnap
 
 v.
 
 Boeing Co.,
 
 823 P.2d 528, 534 (Wash. Ct. App. 1992)).
 

 [39]
 

 Bob Allyn Masonry argues that Murphy’s journey is more appropriately analyzed under the dual purpose journey exception to the going and coming rule.
 
 See D & C Builders v. Cullinane,
 
 98 Nev. 67, 69, 639 P.2d 544, 546 (1982). The dual purpose journey rule applies to situations in which an employee sustains an injury during a trip undertaken for both a business and a personal purpose.
 
 Id.
 
 We disagree with Bob Allyn Masonry for two reasons. First, we adopted the dual purpose journey exception prior to the Legislature’s enactment of the rule requiring neutral construction of the Nevada Industrial Insurance Act.
 
 See
 
 NRS 616A.010. Therefore, the exception is not consistent with the current statutory mandate requiring neutral construction of workers’ compensation laws. Second, the dual purpose journey exception is not applicable where the employee’s performance of the business portion of the journey requires a material deviation from the route for performing the personal portion of the journey.
 
 See Cullinane,
 
 98 Nev. at 68-71, 639 P.2d at 545-47.