RIO ALL SUITE HOTEL AND CASINO; AND SEDGWICK CMS/CANNON COCHRAN MANAGEMENT SERVICES, INC., APPELLANTS, v. KATHRYN PHILLIPS, RESPONDENT.

No. 53191

September 30, 2010                                       240 P.3d 2

[Rehearing denied December 22, 2010]

*Lewis Brisbois Bisgaard & Smith LLP* and *J. Michael McGroarty*, Las Vegas, for Appellants.

*Evan Beavers*, Nevada Attorney for Injured Workers, and *Gary T. Watson*, Deputy Attorney for Injured Workers, Carson City, for Respondent.

## OPINION

By the Court, HARDESTY, J.:

While descending a staircase at work, respondent Kathryn Phillips injured her ankle on one of the steps. In this appeal, we address the standard to be applied to determine whether an em-

ployee seeking workers' compensation benefits has demonstrated, pursuant to NRS 616C.150(1), that her injury "arose out of" her employment. In situations in which an employee's injury is caused by a neutral risk—a risk that is not personal to the employee or solely employment-related—we adopt the increased-risk test, which evaluates whether the employee was exposed to a risk greater than that faced by the general public. If so, then the employee's injury is deemed to have arisen out of his or her employment.

## FACTS

Phillips was employed for 17 years by appellant Rio All Suite Hotel & Casino in Las Vegas, Nevada, as a poker and blackjack dealer. In October 2006, Phillips was working her usual eight-hour shift. Upon taking her first 20-minute break of the day, Phillips started walking down the stairs that led to the employees' break room. Phillips grabbed the handrail with her right hand, took a step down with her right foot and then, according to Phillips, the accident occurred as follows:

> [W]hen I stepped down on my left foot, it just twisted over. . . . I never missed a step. I just sat down on the stair that my butt was on, which was a couple up from it. But, my leg just was sitting there. I didn't lose my balance. I didn't even slip at all. Just that foot twisted around.

Phillips did not contend that the stairs were defective or contained debris.

Phillips was subsequently transported to the hospital, where x-rays revealed that she fractured her ankle. The following day, Phillips was evaluated at Concentra Medical Centers and filled out a workers' compensation claim form. On the form, the treating physician indicated that Phillips' injury was work-related. A few days later, Phillips underwent surgery to repair her ankle.

In November 2006, Rio's third-party administrator, Sedgwick CMS,[2] denied Phillips' workers' compensation claim because she did not "prove[ ] by a preponderance of the evidence that [her] injury arose out of the course of [her] employment" pursuant to NRS 616C.150(1). Phillips requested a hearing before the Nevada Department of Administration, Hearings Division. Citing this court's decision in *Mitchell v. Clark County School District*, 121 Nev. 179, 111 P.3d 1104 (2005), the hearing officer affirmed Sedgwick CMS's determination, stating that "the claim is not compensable under workers['] compensation." The hearing officer indicated that if Phillips' claim had been filed pre-*Mitchell* she

---

[2]At the time of Phillips' accident, Rio's third-party administrator was Sedgwick CMS, but Cannon Cochran Management Services, Inc., is the administrator appellant in this appeal.

would have received compensation; however, *"Mitchell* has changed the landscape for injuries occurring on-the-job and whether they are covered under workers['] compensation."

Phillips appealed the hearing officer's decision. The appeals officer reversed the hearing officer's decision and found that Phillips established that she "was injured in the course and scope of her employment" pursuant to NRS 616C.150(1). The appeals officer found that Phillips' case was "distinguishable" from *Mitchell* because Phillips' injury did not result from an "unexplained fall." Without elaborating, the appeals officer also stated that "[t]he *Mitchell* [c]ourt mentions the inherent dangerousness of stairways." Rio and Sedgwick filed a petition for judicial review of the appeals officer's decision. The district court entered an order denying Rio and Sedgwick's petition for judicial review, finding that the appeals officer's decision did not violate NRS 233B.135(3), relating to the standard of review of an agency's decision. Rio and its third-party administrator (collectively, Rio) appeal the district court's decision.

## DISCUSSION

When reviewing a district court's denial of a petition for judicial review of an agency decision, this court engages in the same analysis as the district court: we " 'determine whether the agency's decision was arbitrary or capricious and was thus an abuse of the agency's discretion.' " *Bob Allyn Masonry v. Murphy*, 124 Nev. 279, 282, 183 P.3d 126, 128 (2008) (quoting *Weaver v. State, Dep't of Motor Vehicles*, 121 Nev. 494, 498, 117 P.3d 193, 196 (2005)). We defer to an agency's findings of fact as long as they are supported by substantial evidence. *Law Offices of Barry Levinson v. Milko*, 124 Nev. 355, 362, 184 P.3d 378, 383-84 (2008). Questions of law are reviewed de novo. *Bob Allyn Masonry*, 124 Nev. at 282, 183 P.3d at 128.

Under NRS 616C.150(1), to receive workers' compensation for an injury, the injured employee must "establish by a preponderance of the evidence that [her] injury arose out of and in the course of [her] employment." The parties do not dispute that Phillips' injury occurred during the course of her employment. Rather, the dispute centers on whether her injury "arose out of" her employment.

This court first interpreted the phrase "arose out of" in the context of NRS 616C.150(1) in *Rio Suite Hotel & Casino v. Gorsky*, 113 Nev. 600, 604, 939 P.2d 1043, 1045-46 (1997). In *Gorsky*, a casino employee on his way to clock out after his shift ended fell on a flat surface while walking down a hallway that was clear of "any obstacle or foreign substance." *Id.* at 601, 939 P.2d at 1044. This court concluded that the employee did not satisfy the NRS

616C.150(1) "arose out of" prong because he failed to present "evidence which demonstrated that his work environment caused him to fall." *Id.* at 604, 939 P.2d at 1046. Instead, the evidence indicated that his fall was due to his multiple sclerosis. *Id.* at 604-05, 939 P.2d at 1046.

This court held that it is insufficient for the employee to show that the injury occurred merely because the employee was at work and emphasized that "the Nevada Industrial Insurance Act is not a mechanism which makes employers absolutely liable for injuries suffered by employees who are 'on the job.' " *Id.* at 605, 939 P.2d at 1046. An employee must demonstrate that a "causal connection" exists "between the workplace conditions and how those conditions caused the injury." *Id.* at 604, 939 P.2d at 1046.

We revisited our *Gorsky* holding in *Mitchell*, where an employee who fell on a flat surface at work while walking toward a staircase and then rolled down the stairs could not explain the reason for her fall. *Mitchell*, 121 Nev. at 180-82, 111 P.3d at 1105, 1106. The employee argued that because she did not have a health affliction that caused her to fall and "because staircases are inherently dangerous," her injury " 'arose out of' her employment." *Id.* at 181, 111 P.3d at 1106. The appeals officer determined that the employee's fall did not arise out of her employment, and the district court denied her petition for judicial review. *Id.* at 181, 111 P.3d at 1105.

In affirming the district court's judgment, we reiterated the standard enunciated in *Gorsky* and stated that the focus of the NRS 616C.150(1) inquiry is not whether an employee's injury resulted from a personal affliction. *Mitchell*, 121 Nev. at 182-83, 111 P.3d at 1106-07. Rather, the employee must show that " 'the origin of the injury is related to some risk involved within the scope of employment.' " *Id.* at 182, 111 P.3d at 1106 (quoting *Gorsky*, 113 Nev. at 604, 939 P.2d at 1046). Thus, because the employee in *Mitchell* could not explain how the conditions of her employment caused her to fall on the flat surface, we determined that the appeals officer correctly concluded that she failed to demonstrate the requisite "causal connection." *Id.* We take this opportunity to clarify that determining the type of risk faced by the employee is an important first step in analyzing whether the employee's injury arose out of her employment. In particular, whether an employee has a personal affliction is relevant to the question of what risk the employee faced and, ultimately, whether the employee's injury is compensable.

As enunciated initially in *Gorsky*, an injury arises out of employment if there is " 'a causal connection between the injury and

the employee's work,' in which 'the origin of the injury is related to some risk involved within the scope of employment.'" *Mitchell*, 121 Nev. at 182, 111 P.3d at 1106 (quoting *Gorsky*, 113 Nev. at 604, 939 P.2d at 1046). The types of risks that an employee may encounter during employment are categorized as "those that are solely employment related, those that are purely personal, and those that are neutral." *K-Mart Corp. v. Herring*, 188 P.3d 140, 146 (Okla. 2008); *see also Bentt v. Dept. of Employment Services*, 979 A.2d 1226, 1232 (D.C. 2009); 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* §§ 4.01-4.03, at 4-2 to 4-3 (2010).

Injuries resulting from employment-related risks are "all the obvious kinds of injur[ies] that one thinks of at once as industrial injur[ies]" and are generally compensable. 1 Larson & Larson, *supra*, § 4.01, at 4-2. Slips and falls that are due to employment risks "include tripping on a defect at employer's premises or falling on uneven or slippery ground at the work site." *Ill. Consol. Tel. Co. v. Industrial Com'n*, 732 N.E.2d 49, 53 (Ill. App. Ct. 2000) (Rakowski, J., specially concurring). Generally, injuries caused by employment-related risks are deemed to arise out of employment and are compensable. *See Bentt*, 979 A.2d at 1232; *Herring*, 188 P.3d at 146; 1 Larson & Larson, *supra*, § 4.01, at 4-2.

Personal risks are those that are "so clearly personal that, even if they take effect while the employee is on the job, they could not possibly be attributed to the employment." 1 Larson & Larson, *supra*, § 4.02, at 4-2. For example, "a fall caused by the [employee's] personal condition," such as a bad knee, epilepsy, or multiple sclerosis, is a personal risk. *Mitchell*, 121 Nev. at 181 n.7, 111 P.3d at 1106 n.7; *see also Gorsky*, 113 Nev. at 604-05, 939 P.2d at 1046 (determining that substantial evidence supported the appeals officer's determination that the employee's injury did not arise out of his employment, as the evidence indicated that his fall was due to his multiple sclerosis). As such, an employee's injury resulting from a personal risk is not compensable. *See Gorsky*, 113 Nev. at 603, 605, 939 P.2d at 1045, 1046; *see also Bentt*, 979 A.2d at 1232; *Herring*, 188 P.3d at 146; 1 Larson & Larson, *supra*, at 4-1, ch. 4.

Finally, neutral risks are those that are "of neither distinctly employment nor distinctly personal character." 1 Larson & Larson, *supra*, § 4.03, at 4-2; *see also Mitchell*, 121 Nev. at 181 n.7, 111 P.3d at 1106 n.7 ("An unexplained fall, originating neither from employment conditions nor from conditions personal to the [employee], is considered to be caused by a neutral risk."). Here,

Phillips' injury occurred while traversing a staircase that was free of defects, and there is no evidence that a risk personal to Phillips caused her fall. Thus, we conclude that Phillips' risk of injury falls within the neutral-risk category.

To determine whether an injury caused by a neutral risk "arose out of" employment, courts typically apply one of the following three tests: increased-risk test, actual-risk test, or positional-risk test. *See, e.g., Herring*, 188 P.3d at 146; *see also* 1 Larson & Larson, *supra*, § 3.01, at 3-4. The most widely utilized is the increased-risk test, *see* 1 Larson & Larson, *supra*, § 3.03, at 3-4.1, which "examines whether the employment exposed the claimant to a risk greater than that to which the general public was exposed." *Herring*, 188 P.3d at 146. The actual-risk test ignores whether the risk is common to the public and permits an employee to recover for his injury "when the employer subjects the worker to the very risk that injures him." *Id*. Finally, the positional-risk test is a "but for" approach that evaluates "whether the claimant would have been injured *'but for* the fact that the conditions and obligations of the employment placed [the] claimant in the position where he was injured.' " *Mitchell*, 121 Nev. at 182, 111 P.3d at 1106 (alterations in original) (quoting 1 Larson & Larson, *supra*, § 3.05, at 3-6). We take this opportunity to provide guidance and clarity to the bench and bar by adopting a single test to be applied when determining whether an injury caused by a neutral risk "arose out of" employment.

We have expressly rejected the positional-risk test for two reasons. *See id*. at 183, 111 P.3d at 1106-07. First, the test conflicts with NRS 616C.150(1) because it reduces the two-prong analysis to one prong: whether the employee was injured on the job. *Id*. at 183, 111 P.3d at 1107. Second, the test heavily favors employees and is inconsistent with NRS 616A.010(4), which requires a neutral construction of the Nevada Industrial Insurance Act (NIIA). *Id*. Our rejection of the positional-risk test stands.

Although the actual-risk test and positional-risk test are separate tests, application of the two tests is very similar. In *Bivins v. St. John's Regional Health Center*, an employee suffered an injury from an unexplained fall and filed a claim for workers' compensation benefits. 272 S.W.3d 446, 447-49 (Mo. Ct. App. 2008). In denying the employee's claim, the Labor and Industrial Relations Commission equated the two tests and determined that the injury would only be compensable under "the *but for* reasoning of the positional or actual risk doctrine." *Id*. at 449 (emphasis added). The court agreed with the Commission's determination and affirmed the order denying compensation. *Id*. at 452.

The similarity in application of the two tests is further highlighted in *Green Hand Nursery, Inc. v. Loveless*, where the court stated that it applies "the 'actual risk' test to determine whether an injury 'arises out of' the employment." 684 S.E.2d 818, 822 (Va. Ct. App. 2009). But, in affirming the award of workers' compensation, the court said that "[t]he commission could properly infer from the[ ] facts that, *but for* her job duties and the physical obstacles confronting her, she could have avoided injury." *Id.* (emphasis added). This language is nearly identical to the positional-risk test previously rejected in Nevada. *See Mitchell*, 121 Nev. at 182, 111 P.3d at 1106. Because its application is strikingly similar to the application of the positional-risk test that we have already rejected, we also reject the actual-risk test, and instead adopt the increased-risk test to determine whether an injury resulting from a neutral risk is compensable.[3]

Under the increased-risk test, an employee may recover if she is subjected "to a risk greater than that to which the general public [is] exposed." *Herring*, 188 P.3d at 146. Even if a risk to which the employee is exposed "is [not] *qualitatively* . . . peculiar to the employment," the injury may be compensable as long as she faces an "increased *quantity* of a risk." 1 Larson & Larson, *supra*, § 3.03, at 3-4.1. Thus, when an employee "is exposed to a common risk more frequently than the general public," there may be an increased risk. *Nascote Industries v. Industrial Com'n*, 820 N.E.2d 531, 535 (Ill. App. Ct. 2004); *see also* 1 Larson & Larson, *supra*, § 3.03, at 3-4.1. We conclude that the increased-risk test strikes an adequate balance between the employee's right to receive compensation for a work-related injury and the employer's right not to be held liable for every injury suffered by an employee in the workplace. Maintaining such a balance satisfies the requirement in NRS 616A.010 that Nevada's workers' compensation laws be interpreted in a neutral manner.

The act of descending a staircase at work, in and of itself, does not present a greater risk than that faced by the general public; however, when an employee is required to use the stairs more frequently than a member of the general public, she faces an increased risk of injury. *See Nascote Industries*, 820 N.E.2d at 535; *see also* 1 Larson & Larson, *supra*, § 3.03, at 3-4.1 to 3-5. Moreover, steps of an unusual height, *see Haley v. Springs Global U.S., Inc.*, 681 S.E.2d 62, 65 (Va. Ct. App. 2009), or the man-

---

[3]We previously applied the increased-risk test in one very narrow context—to determine whether a sexual assault that occurred at the claimant's place of work arose out of her employment. *See Wood v. Safeway, Inc.*, 121 Nev. 724, 734, 121 P.3d 1026, 1032-33 (2005).

ner in which an employee is required to perform her job may increase her risk of falling on a staircase. *See Marion Correctional Center v. Henderson*, 458 S.E.2d 301, 303 (Va. Ct. App. 1995) (determining that because ''[o]bservation of the guard towers [as the employee descended the staircase] was one of the security functions of his employment,'' the employee faced an increased risk of falling).

Here, we conclude that substantial evidence in the record supports the conclusion that under the increased-risk test, Phillips' injury arose out of the course of her employment. Phillips worked eight-hour shifts, during which she was required to take six periodic breaks. To access the employees' break room, employees had to traverse two flights of stairs. There is no evidence in the record demonstrating that employees were permitted to use any other means of ingress and egress to and from the break room. Because the employees' periodic breaks were mandatory, Phillips was required to use the staircase six times during each shift. In fact, in its opening brief, Rio calculated that during the course of Phillips' 17-year employment, she traversed the stairs approximately 25,000 times. We conclude that the frequency with which Phillips was required to use the stairs subjected her to a significantly greater risk of injury than the risk faced by the general public.

In so concluding, we emphasize that it is not the mere act of using the stairs that subjected Phillips to a risk greater than that faced by the general public. Additionally, we note that under the increased-risk test, whether a fall is explained or unexplained is irrelevant. The key inquiry is whether the risk faced by the employee was greater than the risk faced by the general public. Thus, if an employee suffers an inexplicable fall, she can recover if she makes the requisite showing. Accordingly, we clarify *Mitchell* to the extent that it holds that unexplained falls are never compensable.

In applying the increased-risk test, we conclude that substantial evidence in the record supports the conclusion that Phillips' injury arose out of the course of her employment. Accordingly, we affirm the order of the district court.

PARRAGUIRRE, C.J., and DOUGLAS, CHERRY, SAITTA, and GIBBONS, JJ., concur.