912 P.2d 1322

**Joseph J. DUGAN, individually, and as duly-appointed guardian for and on behalf of Sarah J. Dugan, his incapacitated adult wife; Margaret Dugan Radovanovich, Diane Dugan Roche, Lynne M. Dugan, and Brian Dugan, children of Joseph J. and Sarah J. Dugan, Plaintiffs–Appellants,**

v.

**AMERICAN EXPRESS TRAVEL RELATED SERVICES COMPANY, INC., a New York corporation, Defendant–Appellee.**

No. 1 CA–CV 93–0464.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 5, 1995.

Reconsideration Denied Oct. 2, 1995.

Review Denied March 19, 1996.

vening injury combining with her non-industrial, pre-existing heart condition, we affirm the trial court's judgment that the plaintiffs are precluded from maintaining an action in tort against TRS.

## FACTS [1] AND PROCEDURAL HISTORY

Mrs. Dugan had a history of cardiovascular problems. On November 2, 1990, while working for TRS, she suffered a "heart event" and lost consciousness. Her job responsibilities and work environment did not contribute to the cardiac episode. After Mrs. Dugan collapsed, her co-workers attempted to call the 9–1–1 emergency telephone number to summon aid. They were, however, unable to contact the emergency operator from the TRS telephones because, unbeknownst to the co-workers, TRS had blocked that number in favor of an in-house emergency number. Due to the inability to reach 9–1–1 services, emergency medical assistance was delayed, and Mrs. Dugan suffered prolonged oxygen deprivation (anoxia) resulting in severe, irreversible brain damage.

The plaintiffs sued TRS (and others not parties to this appeal) to recover for Mrs. Dugan's brain injury on her behalf and for themselves. They maintained as to TRS that Mrs. Dugan's injuries were the result of an independent tort rather than from an injury within the contemplation of the Arizona Workers' Compensation Act. *See* Ariz.Rev. Stat.Ann. ("A.R.S.") §§ 23–901 through 1091. The plaintiffs asserted that, by blocking 9–1–1 access without advising its employees of the method by which to summon emergency assistance, TRS negligently failed to warn of this jeopardy and provide a safe workplace for Mrs. Dugan. They also alleged that TRS negligently interfered with a third person's ability to render aid.

The plaintiffs moved the trial court for partial summary judgment, arguing that they were entitled to institute a tort action against

Whissen, Tidmore & Guendel, P.C. by William K. Whissen, Phoenix, for plaintiffs–appellants.

Steptoe & Johnson by David J. Bodney, Peter B. Swann, Phoenix, for defendant–appellee.

## OPINION

EHRLICH, Judge.

Sarah Dugan's husband, Joseph Dugan, and the Dugans' four adult children (collectively, "plaintiffs") appeal from the summary judgment in favor of American Express Travel Related Services Company, Inc. ("TRS") and the subsequent denial of their motions for new trial. Because we conclude that Mrs. Dugan had a compensable brain injury due to an industrially-related, inter-

---

1. On review of a summary judgment, we view the facts and evidence, and all reasonable inferences therefrom, in a light most favorable to the plaintiffs against whom judgment was entered. *E.g., AROK Const. Co. v. Indian Const. Serv.,* 174 Ariz. 291, 293, 848 P.2d 870, 872 (App.1993).

TRS rather than proceed in accordance with the workers' compensation statutes because Mrs. Dugan's heart event did not arise out of her employment. They elaborated that, under A.R.S. section 23–1043.01(A), which generally exempts "heart-related" injuries, her injury was excluded from worker's compensation coverage because there was no evidence that any factor in the employment setting was a substantial, contributing cause of her heart event.

TRS then sought summary judgment on the basis that the claims asserted against it were preempted by the workers' compensation law. Agreeing with the plaintiffs that Mrs. Dugan's heart event bore no relationship to her employment, TRS maintained that the plaintiffs' claims thus were based on its alleged negligent aggravation of Mrs. Dugan's condition. It argued that Mrs. Dugan's brain injury was compensable because it arose out of and occurred within the course of her employment.

The trial court denied the plaintiffs' motion for partial summary judgment and granted TRS's motion. It specifically determined that Mrs. Dugan's brain injury arose out of her employment with TRS because, accepting the plaintiffs' contentions as true, if Mrs. Dugan's heart event had occurred at a different place, she would not have suffered her impairment. The court characterized Mrs. Dugan's brain injury as an aggravation of a pre-existing physical condition, the damages from which are covered by workers' compensation. Accordingly, it ruled that the plaintiffs could not maintain a tort action against TRS.

The plaintiffs simultaneously filed four motions for new trial. In the first, they argued that the trial court improperly granted summary judgment in favor of TRS because it had not proved that it carried workers' compensation insurance or was self-insured. They maintained in the second motion that the court erred either by not considering the effect of A.R.S. section 23–1043.01 or by concluding that the facts overcame the presumption that heart-related injuries are not compensable. In the third motion, the plaintiffs contended that Mrs. Dugan's brain injury could not have occurred "in the course of" her employment because, at the time of the delay in obtaining emergency assistance, she was unconscious and could not have been performing her job duties. Finally, the plaintiffs asserted that newly-discovered evidence established a genuine issue of material fact as to the applicability of the "dual-capacity" doctrine. The court denied the motions, and the plaintiffs timely appealed from this denial and the summary judgment, raising the same issues as they asserted in their new-trial motions.

## DISCUSSION

### A. Proof of Workers' Compensation Insurance

The plaintiffs argue that the trial court should not have granted TRS summary judgment, finding it statutorily immune from an employee's tort claim, without first requiring TRS to prove that it was covered by workers' compensation insurance in accordance with A.R.S. section 23–961. TRS responds that the plaintiffs never alleged that TRS lacked workers' compensation coverage and that, in any event, the plaintiffs bore the burden of proving that workers' compensation was not Mrs. Dugan's exclusive remedy.

■ As a preliminary matter, we disagree with the plaintiffs' contention that A.R.S. section 23–906(A) requires the trial court to expressly find that the employer has complied with the insurance provisions of A.R.S. section 23–961 as a prerequisite to an employer's assertion of statutory immunity. The language of the statute contains no such requirement [2] and we are unaware of caselaw to that effect.

■ An employee's right to receive compensation for an industrial injury is her ex-

2. Section 23–906(A) provides:
Employers who comply with the provisions of § 23–961 or 23–962 as to securing compensation, and the employers' workers' compensation insurance carriers or administrative service representatives, shall not be liable for damages at common law or by statute, except

clusive remedy against the employer unless the harm was caused by the employer's willful misconduct, which the plaintiffs do not suggest. A.R.S. § 23–1022(A). *See also* A.R.S. § 23–906(A). The trial court thus lacks subject-matter jurisdiction over a tort action against an employer brought by an employee whose exclusive remedy for an industrial injury is workers' compensation benefits. *Swichtenberg v. Brimer,* 171 Ariz. 77, 81–82, 828 P.2d 1218, 1222–23 (App.1991). Therefore, if Mrs. Dugan's brain injury occurred as the result of an accident which arose out of and in the course of her employment, the plaintiffs' exclusive remedy against TRS is that which they are entitled to receive under the workers' compensation statutes.

While seeking to invoke the trial court's jurisdiction over their tort claims, the plaintiffs never challenged TRS's insurance status at the time of Mrs. Dugan's injury.[3] Neither party suggested that Mrs. Dugan had rejected workers' compensation coverage, but the plaintiffs could have shown that TRS had failed to secure workers' compensation coverage, A.R.S. § 23–907, or that it had not properly posted notices of compensation coverage or had failed to provide forms for rejecting such coverage. A.R.S. § 23–906(A), (E). These issues concern the trial court's jurisdiction over the plaintiffs' tort claims, *cf. Howard P. Foley Co. v. Harris,* 10 Ariz.App. 78, 80, 456 P.2d 398, 400 (1969) (issues whether employer posted notices and provided rejection forms underlie trial court's jurisdiction), the burden of proof for which rests with the plaintiffs. *Swichtenberg,* 171 Ariz. at 82, 828 P.2d at 1223.

While the plaintiffs argued against compensability in their second amended complaint and motion for partial summary judgment, it was for reasons other than TRS's failure to secure workers' compensation insurance or post notice of such coverage. TRS, however, appended to its statement of facts in support of its cross-motion for summary judgment and response to the plaintiffs' motion a sworn statement from its manager of human resources that the appropriate notices were posted conspicuously in Mrs. Dugan's work area. Though it would have been easy for TRS to simply have stated that it had coverage, not until their reply to TRS did the plaintiffs even mention the notice-posting requirement and then only in the context of TRS's motion to stay discovery pending the resolution of the motions for summary judgment. The trial court did not abuse its discretion when it denied the plaintiffs' first motion for new trial on this basis. *See Delbridge v. Salt River Project Agric. Imp. and Power Dist.,* 182 Ariz. 46, 53, 893 P.2d 46, 53 (App.1994).[4]

## B. Compensability of Mrs. Dugan's Brain Injury

The issue of coverage aside, the plaintiffs' principal argument is that they should not be prohibited from maintaining a tort action against TRS because their medical expert attested, without contradiction, that Mrs. Dugan's brain damage was a direct consequence of her heart-related injury and ensuing oxygen deprivation. According to A.R.S. section 23–1043.01(A), they insist, the harm is not

as provided in this section, for injury or death of an employee wherever occurring, but it shall be optional with employees to accept compensation as provided by this chapter or to reject the provisions of this chapter and retain the right to sue the employer as provided by law.

3. In ruling on the plaintiffs' first motion for new trial, which related to the burden of proof regarding TRS's compliance with A.R.S. section 23–691, the trial court noted that the "Plaintiffs do *not* allege that ... TRS was uncovered by Workmen's Compensation. Therefore, this issue appears more academic that [sic] substantive." [Emphasis original.]

4. We are unpersuaded by the plaintiffs' contention that, because the trial court stayed discovery, they were prohibited from learning whether TRS was insured. The plaintiffs filed their motion for partial summary judgment, in which they did not raise the proof-of-insurance issue, prior to discovery or receipt of TRS's disclosure statement. TRS then requested a stay of discovery, which the court granted pending its ruling on both motions for summary judgment. Thus, the plaintiffs had the opportunity to investigate TRS's insurance status prior to filing their dispositive motion. Furthermore, notwithstanding the court's order, the plaintiffs readily could have learned the information from the Industrial Commission. *Cf. Industrial Comm'n v. Holohan,* 97 Ariz. 122, 126, 397 P.2d 624, 627 (1964).

compensable because the statute exempts from coverage a "heart-related . . . injury, illness or death. . . ." They contend that general principles of workers' compensation law regarding injury aggravation are inapplicable to the extent that they are inconsistent with the specific provisions of A.R.S. section 23–1043.01. Accordingly, the plaintiffs disagree with TRS's characterization that Mrs. Dugan suffered two injuries: the first being an original, non-compensable heart injury and the second, a compensable subsequent aggravation of that injury. They regard the incident as a continuous heart-related injury occurring in two phases.

When a worker whose employer complies with workers' compensation insurance coverage is injured by an "accident arising out of and in the course of [her] employment," that worker is entitled to compensation for losses suffered due to the industrial injury. A.R.S. § 23–1021; *Delbridge*, 182 Ariz. at 50, 893 P.2d at 50. An accident includes any unexpected, injury-causing event that is work-connected; it need not be accompanied by physical force or exertion. *Brock v. Industrial Comm'n*, 15 Ariz.App. 95, 96, 486 P.2d 207, 208 (1971); *see also State Comp. Fund v. Industrial Comm'n*, 24 Ariz.App. 31, 34, 535 P.2d 623, 626 (1975) (nonphysical event may constitute an "accident"). However, as expressed in the statute quoted in relevant part below, except for certain circumstances, a sudden, violent or acute process involving an employee's heart is not an "accident arising out of and in the course of employment."

> A heart-related or perivascular injury, illness or death[5] shall not be considered a personal injury by accident arising out of and in the course of employment and is not compensable pursuant to this chapter unless some injury, stress or exertion related to the employment was a substantial contributing cause of the heart-related or perivascular injury, illness or death.

A.R.S. § 23–1043.01(A).

There is no dispute that the workers' compensation statutes are designed to benefit the injured employee rather than the employer. Article 18, section 8 of the Arizona Constitution directed the legislature to enact legislation granting immunity to employers who comply with workers' compensation provisions. *Delbridge*, 182 Ariz. at 50, 893 P.2d at 50; *see Bussanich v. Douglas*, 152 Ariz. 447, 451, 733 P.2d 644, 648 (App. 1986). Consequently, such statutes are "liberally interpreted when imposing liability for payment of compensation benefits, . . . and strictly interpreted when loss of the worker's common law rights is the object for which the statute is invoked. . . ." *Young v. Environmental Air Products, Inc.*, 136 Ariz. 158, 163, 665 P.2d 40, 45 (1983). If the employee does not, prior to an injury, file a notice rejecting workers' compensation coverage, the employer's immunity takes precedence over the employee's right to sue the employer in a civil tort action. *Delbridge*, 182 Ariz. at 50, 893 P.2d at 50.

There is no evidence that, prior to her injury, Mrs. Dugan rejected workers' compensation coverage. *See* A.R.S. § 23–906. Moreover, the parties agree that Mrs. Dugan's heart event is not compensable because there was no employment-related injury, stress or exertion which substantially contributed to this episode. *See* A.R.S. § 23–1043.01(A). Nonetheless, even under the plaintiffs' theory, Mrs. Dugan's brain injury was not an uninterrupted consequence of her heart event. Instead, her brain injury was caused in whole or in part by an intervening incident—the delay in emergency medical attention caused by TRS's action in blocking 9–1–1 access—and the plaintiffs concede in their complaint that they suffered as a result damages beyond those that they would have suffered had access to 9–1–1 been available. Therefore, to determine whether the plaintiffs may pursue their action in tort against TRS, we must consider the effect of A.R.S. section 23–1043.01(A) on Arizona common law regarding the aggravation of such non-compensable, heart-related injuries.

---

**5.** " 'Heart-related or perivascular injury, illness or death' means myocardial infarction, coronary thrombosis or any other similar sudden, violent or acute process involving the heart or perivascular system, or any death resulting therefrom, and any weakness, disease or other condition of the heart or perivascular system, or any death resulting therefrom." A.R.S. § 23–901(7).

■ The general rule regarding an employer's aggravation of an employee's pre-existing medical condition can be summarized as follows:

> Preexisting disease or infirmity of the employee does not disqualify a claim under the "arising out of employment" requirement if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the death or disability for which compensation is sought. This is sometimes expressed by saying that the employer takes the employee as he finds him.

1 ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 12.21 (1994). These principles are well-recognized by Arizona law. *E.g., Gullick v. Industrial Comm'n,* 94 Ariz. 237, 240, 383 P.2d 123, 125 (1963); *McCreary v. Industrial Comm'n,* 172 Ariz. 137, 144, 835 P.2d 469, 476 (App.1992).

■ When an industrial injury aggravates a pre-existing physical condition or combines with the pre-existing condition to produce an additional injurious effect, the employee is entitled to compensation for losses attributable to the further harm. *Id.* The industrial incident does not have to be the sole cause of the injury but merely must be a "producing" one. *Ramonett v. Industrial Comm'n,* 27 Ariz.App. 728, 729, 558 P.2d 923, 924 (1976) (quoting *Nelson v. Industrial Comm'n,* 24 Ariz.App. 94, 96, 536 P.2d 215, 217 (1975)).

■ In the present case, the delay in emergency medical attention caused by TRS's bar to 9–1–1 telephone access combined with Mrs. Dugan's non-compensable, pre-existing heart condition to cause, at least in part, her severe brain injury. This inability to reach emergency assistance through 9–1–1 constitutes an "accident" for purposes of A.R.S. section 23–1021. Thus, because Mrs. Dugan had not previously rejected workers' compensation benefits, she is entitled to compensation for the losses attributable to her industrially-related brain injury and is precluded from maintaining a common-law tort action against TRS. Had TRS not interfered with Mrs. Dugan's co-workers' ability to summon medical attention, but Mrs. Dugan nevertheless suffered brain damage from the anoxia caused by her heart event, the consequent brain injury would not have been compensable because it would have stayed a heart-related injury.

■ We do not believe that, in promulgating A.R.S. section 23–1043.01(A), the legislature intended to overrule the common law permitting compensation for an injury resulting from a work-related aggravation of or combination with a pre-existing heart-related injury. "It is well settled that the legislature is presumed to know existing law when it enacts a statute," *Wareing v. Falk,* 182 Ariz. 495, 500, 897 P.2d 1381, 1386 (App.1995) (citations omitted), and, in fact, A.R.S. section 23–1043.01(A) codified Arizona case law which held that heart attacks may be accidents within the meaning of workers' compensation law. *Phelps v. Industrial Comm'n,* 155 Ariz. 501, 505, 747 P.2d 1200, 1204 (1987).

## C. In the Course of Employment

■ As said earlier, a worker's injury is compensable if it arose out of and occurred in the course of employment. A.R.S. § 23–1021(A). The plaintiffs contend that the trial court either did not consider or resolved incorrectly the question of whether Mrs. Dugan's injury occurred in the course of her employment with TRS. Contrary to the trial court's finding that Mrs. Dugan's injury occurred while she was performing her job function, the plaintiffs argue that the inference from the record is that, when her brain injury occurred, Mrs. Dugan was incapacitated and/or unconscious and therefore not involved in any activity that could be considered to be in the course of her employment. Again, we disagree.

An injury occurs in the course of employment if the time, place and circumstance of the injury are related to the employment. *E.g., Circle K Store No. 1131 v. Industrial Comm'n,* 165 Ariz. 91, 93–94, 796 P.2d 893, 895–96 (1990); *Jayo v. Industrial Comm'n,*

181 Ariz. 267, 269, 889 P.2d 625, 627 (App. 1995). There is no requirement that the employee be actively engaged in job duties at the time the injury occurs. For example, in *Royall v. Industrial Comm'n*, 106 Ariz. 346, 476 P.2d 156 (1970), the supreme court found that a worker's injury during a 30–minute paid lunch break and while walking toward a telephone provided by the employer for its employees in a lounge area occurred in the course of employment.

Furthermore, an employee need not be conscious when the injury occurs for it to be deemed suffered in the course of employment. In *Peterson v. Industrial Comm'n*, 16 Ariz.App. 41, 490 P.2d 870 (1971), the employee was on a trip for his employer and asleep when his head became caught between two slats of the headboard and he suffocated. This court concluded that his death was due to an accident arising out of and in the course of his employment.

The record in the present matter establishes that Mrs. Dugan was in the course of her employment when she suffered brain damage. At the time of her heart event and the subsequent delay in the response by emergency personnel, Mrs. Dugan was at the place of her employment during her regular work hours. It is undisputed that, when the heart event occurred, she was engaged in her assigned duties which inured to the benefit of TRS. The fact that she was not performing these duties at the precise instant the injury-producing delay occurred does not diminish our conclusion. The trial court properly denied the plaintiffs' third motion for new trial.

## D. Dual–Capacity Doctrine

Finally, the plaintiffs attempt to avoid the exclusiveness of the workers' compensation scheme by arguing that the peculiar facts of their case require the application of the dual-capacity doctrine. They contend specifically that, when it blocked the in-house access to the 9–1–1 emergency system, TRS became a "guardian of the quick and accurate delivery of emergency services," thereby acting in a capacity independent from its status as an employer. They maintain that Mrs. Dugan was injured as a result of TRS's actions in that assumed capacity. As in earlier cases and as the trial court did in response to the plaintiffs' fourth motion for new trial, we decline to apply the doctrine to the present facts.

According to the dual-capacity or dual-persona doctrine, an employer who normally is shielded from tort liability by the exclusivity of workers' compensation may be held liable to an injured worker if the employer acted in a capacity which conferred on it obligations apart from those as an employer and the worker's injury arose out of this other assumed role. *Swichtenberg*, 171 Ariz. at 83–84, 828 P.2d at 1224–25. In other words:

> An employer may become a third person, vulnerable to tort suit by an employee, if— and only if—he possesses a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person.

*Id.* at 84, 828 P.2d at 1225 (quoting 2A ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION §§ 72–81).

TRS was not acting in a capacity independent from its status as employer when it blocked the 9–1–1 access and created an in-house, emergency-response plan. The TRS plan was formulated with the intent to benefit the health and safety of its employees, which necessarily included Mrs. Dugan. Therefore, we need not confront whether the doctrine should be adopted in Arizona because it is inapplicable in this matter.[6]

## CONCLUSION

For the foregoing reasons, the trial court properly determined that the plaintiffs are

---

**6.** In *Hills v. Salt River Project Assoc.*, 144 Ariz. 421, 425, 698 P.2d 216, 220 (App.1985), this court recognized that the dual-capacity doctrine conflicts with the exclusivity provisions of section 23–1022(A), thereby undermining the legislature's purpose in enacting a system in which workers' compensation customarily is the only remedy for industrially-injured workers.

precluded from maintaining a tort action against TRS for the damages sustained from Mrs. Dugan's brain damage. We also find no abuse of the court's discretion in denying the plaintiffs' motions for new trial. Accordingly, the summary judgment in favor of TRS is affirmed.

LANKFORD, P.J., and VOSS, J., concur.