NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

NICHOLAS MARTINEZ, *Plaintiff/Appellant*,

*v.*

SCOTTSDALE HEALTHCARE CORPORATION, an Arizona corporation
dba SCOTTSDALE HEALTHCARE-OSBORN, *Defendant/Appellee*.

No. 1 CA-CV 15-0599
FILED 1-24-2017

Appeal from the Superior Court in Maricopa County
No. CV2012-004911
The Honorable John C. Rea, Judge
The Honorable Jo Lynn Gentry, Judge

**AFFIRMED**

COUNSEL

Tiffany & Bosco, P.A., Phoenix
By Leonard Mark, David Cowles, Amy D. Sells
*Counsel for Plaintiff/Appellant*

Jones, Skelton & Hochuli, P.L.C., Phoenix
By William R. Jones, Jr., Eileen Dennis GilBride, Sean M. Moore
*Counsel for Defendant/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Patricia K. Norris delivered the decision of the Court, in which Judge Samuel A. Thumma and Judge Margaret H. Downie joined.

---

**N O R R I S**, Judge:

¶1 Nicholas Martinez, Plaintiff/Appellant, appeals from the superior court's judgment granting summary judgment in favor of Scottsdale Healthcare Corporation ("SHC"), Defendant/Appellee. Because the injury Martinez alleges arose out of and in the course of his employment with SHC, the Arizona Workers' Compensation Act bars his common law medical negligence claim against SHC. Further, under the circumstances of this case, Martinez is not entitled to pursue that claim against SHC under the dual capacity doctrine. Accordingly, we affirm the superior court's judgment in favor of SHC.

**BACKGROUND AND PROCEDURAL HISTORY[1]**

¶2 SHC employed Martinez as a transporter. On March 8, 2008, while working for SHC and at a SHC facility, Martinez transported a SHC patient who may have had tuberculosis ("TB"). Martinez reported the potential TB exposure to SHC and completed a "Worker's Report of Injury/Incident." SHC directed Martinez to go to its occupational health department to obtain a TB skin test. A physician's assistant in SHC's occupational health department performed the skin test and then referred Martinez to SHC's radiology department for a chest x-ray, indicating on the referral sheet "Positive Skin Test."

¶3 A radiologist x-rayed Martinez at SHC's facility, at SHC's expense. The radiologist interpreted the x-ray and reported: "There is a patchy, nodular infiltrate in the right base and there may be some mediastinal adenopathy. Findings are compatible with coccidiodomycosis or other granulomatous disease. Follow-up chest films could be done to evaluate progress." SHC did not, however, communicate the radiologist's

---

[1]We view the facts in the light most favorable to Martinez, the non-prevailing party. *BMO Harris Bank, N.A. v. Wildwood Creek Ranch, LLC*, 236 Ariz. 363, 365, ¶ 7, 340 P.3d 1071, 1073 (2015).

findings to Martinez. Roughly two years later, a physician diagnosed Martinez with Hodgkin's lymphoma.

**¶4** As relevant here, Martinez sued SHC for Arizona common law medical negligence and alleged SHC had provided him medical treatment in a negligent manner that caused him injuries and damages.[2] In subsequent filings in the superior court, Martinez argued the negligence that "form[ed] the basis of his [medical negligence] occurred while he was being screened for TB," and asserted he had been injured when SHC and the radiologist failed to notify him of the results of his chest x-ray, thereby depriving him of the opportunity to discover and treat his cancer earlier. SHC moved for summary judgment, arguing the Arizona Workers' Compensation Act (the "Act"), Arizona Revised Statutes ("A.R.S.") sections 23-901 to -1104 (2016),[3] barred Martinez's claim because his alleged injury arose out of and in the course of his employment with SHC. The superior court agreed with SHC and granted its motion, ruling that the events that led up to the x-ray were "directly related to Martinez's employment and arose in the course of his employment."

## DISCUSSION

I.      The Exclusivity of the Arizona's Workers' Compensation Act and the Elements of an Injury Governed by the Act

**¶5** The sole basis for the superior court's entry of summary judgment in SHC's favor was that Martinez's claim was preempted by the Act, which meant, as we discuss below, that the superior court did not have jurisdiction to adjudicate that claim. Thus, this appeal does not concern whether, as a factual matter, Martinez could prove an Arizona common law medical negligence claim against SHC. Instead, the narrow but dispositive issue is whether the Act preempted Martinez's claim against SHC.

**¶6** Before statehood, an Arizona employee injured by an employer's negligence could bring a common law tort action against the employer. *See generally Grammatico v. Indus. Comm'n*, 211 Ariz. 67, 70, ¶ 10, 117 P.3d 786, 789 (2005). But, for a variety of reasons, employees bringing

---

[2]Martinez also sued the radiologist, and his claim against the radiologist is pending in the superior court, though stayed pending this appeal. The radiologist is not a party to this appeal.

[3]The applicable provisions of the Workers' Compensation Act have not been materially amended since Martinez's x-ray in March 2008. Thus, we cite to the current version of the statutes.

such claims rarely succeeded. *Id.* To protect workers injured during their employment, the framers of the Arizona Constitution mandated that "[t]he legislature shall enact" workers' compensation legislation "by which compensation shall be required to be paid" to an injured worker (or dependents in case of death) by the worker's employer:

> [I]f in the course of such employment personal injury to or death of any such workman from any accident arising out of and in the course of, such employment, is caused in whole, or in part, or is contributed to, by a necessary risk or danger of such employment, or a necessary risk or danger inherent in the nature thereof, or by failure of such employer, or any of his or its agents or employee or employees to exercise due care or to comply with any law affecting such employment . . . .

Ariz. Const. art. 18, § 8.

¶7         The Arizona Legislature implemented this constitutional mandate shortly after statehood and adopted a broad, comprehensive statutory system for workers' compensation benefits designed to benefit the injured employee. *City of Tucson v. Indus. Comm'n*, 236 Ariz. 52, 57, ¶ 19, 335 P.3d 1131, 1136 (App. 2014). In so doing, the Legislature created a system that balanced the "sacrifices and gains" of both employees and employers. Employees relinquished their common law rights to sue for employment injuries in exchange for a system in which the employers assumed liability without regard to fault and without having to incur the cost of litigation. *Diaz v. Magma Copper Co.*, 190 Ariz. 544, 548-49, 950 P.2d 1165, 1169-70 (App. 1997) (internal citation and quotation omitted).

¶8         As part of this balancing of interests, the Legislature included an exclusivity provision in the Act. Section 23-1022(A) provides that the "right to recover compensation . . . for injuries sustained by an employee . . . is the exclusive remedy against the employer or any co-employee acting in the scope of his employment." A.R.S. § 23-1022(A) ("exclusivity provision"). As our supreme court has recognized, the exclusivity provision is a key component of the balancing of interests made by the Legislature in implementing the constitutional mandate in Article 18, Section 8, as the exclusivity provision reflects the "trade of tort rights for an expeditious, no-fault method by which an employee can receive compensation for accidental injuries sustained in work-related accidents." *Stoecker v. Brush Wellman, Inc.*, 194 Ariz. 448, 451, ¶ 11, 984 P.2d 534, 538 (1999). The Act thus

establishes "a clear legislative intent to bar any common law right-of-action which might possibly flow from a work-related injury." *Mardian Const. Co. v. Sup. Ct. In & For Maricopa Cty.*, 157 Ariz. 103, 106, 754 P.2d 1378, 1381 (App. 1988). Because the Act, based on the constitutional directive, provides the exclusive remedies to injured workers (with a few exceptions not applicable here), "[t]he superior court lacks subject matter jurisdiction in a tort action against an employer by an employee injured in the course of his employment." *Swichtenberg v. Brimer*, 171 Ariz. 77, 82, 828 P.2d 1218, 1223 (App. 1991) (citations omitted). Stated differently, given the Act's breadth and terms, as directed by the Arizona Constitution, the Act preempts common law claims, including an Arizona common law medical negligence claim, for injuries that arise out of and in the course of the employee's employment. *See also* A.R.S. § 23-1021.

¶9            To qualify for workers' compensation benefits, an employee must be injured "by accident." A.R.S. § 23-1021. An "accident" includes "any unexpected, injury-causing event that is work-connected; it need not be accompanied by physical force or exertion." *Dugan v. Am. Express Travel Related Servs. Co., Inc.*, 185 Ariz. 93, 99, 912 P.2d 1322, 1328 (App. 1995); *see Fireman's Fund Ins. Co. v. Indus. Comm'n*, 119 Ariz. 51, 53-54, 579 P.2d 555, 557-58 (1978) (injury is caused by accident when resulting injury is unexpected; physical impact or exertion not required); *see also State Comp. Fund v. Indus. Comm'n*, 24 Ariz. App. 31, 34, 535 P.2d 623, 626 (1975) (nonphysical event may constitute an "accident").

¶10           Further, the injury caused by the accident must arise out of and in the course of the employee's employment. A.R.S. § 23-1021. These two requirements pertain to legal causation. *DeSchaaf v. Indus. Comm'n*, 141 Ariz. 318, 320, 686 P.2d 1288, 1290 (App. 1984) (citations omitted). Additionally, there must also be medical causation, that is, proof that the accident caused the injury. *Polanco v. Indus. Comm'n*, 214 Ariz. 489, 492, ¶ 7, 154 P.3d 391, 394 (App. 2007).

¶11           The "arising out of" requirement is a broad concept that refers to the origin or cause of the injury. *Delbridge v. Salt River Project Agr. Imp. & Power Dist.*, 182 Ariz. 46, 50-51, 893 P.2d 46, 50-51 (App. 1994) (citation omitted). "If the injuries *had their origin in a risk connected with the employment and were a consequence of that risk*, they arose out of the employment." *Id.* at 51, 893 P.2d at 51 (citation omitted). An injury also "arises out of" employment if the injury is incidental to the employee's discharge of the duties of the employment. *PF Chang's v. Indus. Comm'n*, 216 Ariz. 344, 347, ¶ 15, 166 P.3d 135, 138 (App. 2007) (citing *Royall v. Indus. Comm'n*, 106 Ariz. 346, 349, 476 P.2d 156, 159 (1970)). Although these formulations of the arising out of requirement vary, they share a common thread: A causal

relation must exist between the injury and the employment. *E.g., Murphy v. Indus. Comm'n*, 160 Ariz. 482, 485, 774 P.2d 221, 224 (1989).

**¶12**         The "in the course of" requirement refers to the time, place, and circumstances of the injury. *PF Chang's*, 216 Ariz. at 347, ¶ 14, 166 P.3d at 138. "[A]n activity is related to the employment if it carries out the employer's purposes or advances his interest directly or indirectly." *Jayo v. Indus. Comm'n*, 181 Ariz. 267, 270, 889 P.2d 625, 628 (App. 1995) (citing 1A Arthur Larson, *The Law of Workmen's Compensation* § 20.00 (1993)). Although the "in the course of" requirement must be independently satisfied, Arizona courts have recognized that it and the "arising out of" requirement are interrelated and "must be considered as a whole in order to determine whether the necessary degree or quantum of work-connection is established to bring the [claimant] under the coverage" of the Act. *Nowlin v. Indus. Comm'n*, 167 Ariz. 291, 293, 806 P.2d 880, 882 (App. 1990) (citation and quotations omitted).

II.     The Nature of Martinez's Injury

**¶13**         In the superior court, Martinez argued the negligent conduct that formed the basis of his medical negligence claim against SHC occurred when he was being screened for TB, and asserted that, in failing to notify him of the results of the chest x-ray, SHC and the radiologist had injured him by depriving him of the opportunity to discover and treat his cancer earlier. *See generally Stanley v. McCraver*, 208 Ariz. 219, 224-25, ¶ 17, 92 P.3d 849, 854-55 (2004) (explaining in case that did not involve the Act that, depending on the circumstances, doctor retained by a prospective employer may breach the standard of care by failing to disclose to prospective employee abnormalities discovered during pre-employment TB screening). The issue, then, is whether Martinez's claim—which is based on his claimed injury of losing the opportunity to discover and treat his cancer earlier—falls within the exclusivity provision, and preemptive force, of the Act. The answer to this question turns on whether Martinez was injured "by accident arising out of and in the course of his employment." A.R.S. § 23-1021. Reviewing the superior court's summary judgment ruling de novo, the superior court correctly concluded that Martinez's injury "was directly related to Martinez's employment and arose in the course of his employment." *See BMO Harris Bank*, 236 Ariz. at 365, ¶ 7, 340 P.3d at 1073 (appellate court reviews grant of summary judgment de novo); *Mitchell v. Gamble*, 207 Ariz. 364, 368, ¶ 7, 86 P.3d 944, 948 (App. 2004) (whether superior court properly applied Act's exclusivity provision to bar tort claim presented mixed question of law and fact; thus appellate court's review is de novo).

III.     The Act's Exclusivity Provision Bars Martinez's Medical Malpractice
        Claim Against SHC

¶14        As discussed, an industrial accident includes any unexpected, injury-causing event that is work-connected. *See supra* ¶ 9. Martinez was potentially exposed to TB, an occupational hazard, while working as a transporter for SHC. Although Martinez did not contract TB, the injury causing event he alleged occurred in conjunction with that work-connected event. Thus, Martinez was injured "by accident" under Arizona law.

¶15        Further, the injury "by accident" he alleged arose out of and in the course of his employment for SHC. Martinez was potentially exposed to TB while transporting a SHC patient; as his employer, SHC directed Martinez to go to its occupational health department for diagnostic tests and required him to undergo a TB skin test and then a chest x-ray examination conducted by the radiologist for SHC, at SHC's expense. Martinez was x-rayed only because he was employed by SHC and only because he had been exposed to an occupational hazard – TB – during his employment. The radiologist examined Martinez only in connection with Martinez's work for SHC and only at SHC's direction. SHC's alleged negligent diagnostic treatment and the resulting injury Martinez alleges arose directly out of and in the course of his employment by SHC.[4]

¶16        Nevertheless, Martinez argues the injury he experienced did not arise out of his employment because it was not causally related to a necessary risk or danger inherent in his work *as a transporter*. We reject this argument for several reasons.

_____

[4]In *Wickham v. N. Am. Rockwell*, 87 Cal. Rptr. 563, 567 (Cal. Ct. App. 1970), the California Court of Appeals held the exclusivity provisions of California's workers' compensation act barred an employee's negligence claims against his employer and a co-worker physician in circumstances similar to those presented here. There, the employer provided preventive medical services to the employee in connection with occupational hazards but failed to diagnose and report to the employee a non-work related disease thereby interfering with the employee's ability to treat the disease earlier. *Id.* at 564. And, in *Unger v. Cont'l Assurance Co.*, 481 N.E.2d 684, 689 (Ill. 1985), the Illinois Supreme Court held the exclusivity provisions of Illinois' workers' compensation act barred an employee's medical negligence claim against a co-worker physician who failed to diagnose a malignant lesion in a chest x-ray examination which was "perceived as a necessary condition of [the employee's] continued employment."

¶17        First, this argument focuses too narrowly on Martinez's work as a transporter and ignores Arizona law that an injury "arises out of" employment if the injury is incidental to the employee's discharge of the duties of the employment. *See supra* ¶ 11. Martinez was exposed to a potential occupational hazard while working for SHC, and as a result, SHC required him to be tested for TB as part of his employment. Simply put: Having been exposed to potential TB as an employee for a hospital, being tested for TB by the hospital was "incidental" to his duties as an employee of the hospital.

¶18        Second, the injury alleged by Martinez is based on his assertion that SHC acted negligently in failing to disclose to him what it had uncovered during the x-ray examination while being tested for TB as part of his employment. *See supra* ¶ 13. The Act applies to injuries sustained by an employee arising out of the employer's failure to exercise due care in the workplace. *See Gamez v. Brush Wellman, Inc.*, 201 Ariz. 266, 269-271, ¶¶ 6-11, 34 P.3d 375, 378-381 (App. 2001) (employer's negligence, including gross negligence, is governed by the Act and does not amount to willful misconduct which is excluded from the Act); *Diaz*, 190 Ariz. at 551, 553, 950 P.2d at 1172, 1174 (employer's negligent conduct governed by the Act; further, exclusivity provision of the Act barred employee's malpractice claim against co-worker who administered first aid to employee at accident site).

¶19        Third, although Martinez uses different terminology to describe his injury—loss of an opportunity to discover and treat his cancer sooner—he has essentially alleged that SHC's failure to inform him of the x-ray results exacerbated or aggravated his pre-existing, non-compensable cancer. A pre-existing condition that is exacerbated or aggravated by an industrial accident, however, is compensable under the Act and subject to the exclusivity provision of the Act. *See McCreary v. Indus. Comm'n*, 172 Ariz. 137, 144, 835, P.2d 469, 476 (App. 1992) (claim compensable if work activity combines with preexisting condition to cause further injury).

¶20        For example, in *Dugan*, 185 Ariz. at 96, 912 P.2d at 1325, an employee with a preexisting heart condition suffered a "heart event" at work. Unbeknownst to the employee and her co-workers, her employer had blocked 9-1-1 access in favor of an in-house emergency number. *Id.* As a result, emergency medical assistance was delayed, and the employee suffered irreversible brain damage. *Id.* The employee's spouse and children sued the employer for negligently failing to warn about the blocked 9-1-1 access and for negligently interfering with a third person's ability to render aid. *Id.* The employer argued the exclusivity provision barred the civil suit. *Id.* at 97, 912 P.2d at 1326. This court held that although the employee's

8

"heart event" was not a compensable industrial injury, the employer's interference with 9-1-1 access together with the employee's pre-existing heart condition combined to produce the employee's brain injury, and the employer induced delay in accessing medical attention constituted an accident that arose out of and in the course of the employee's employment as required by A.R.S. § 23-1021. *Id.* at 100, 912 P.2d at 1329. Therefore, the exclusivity provision barred the family's negligence claims against the employer. *Id.* at 101-02, 912 P.2d at 1330-31.[5]

**¶21**         Here, similarly, SHC's failure to inform Martinez of the x-ray examination results combined with his non-compensable Hodgkin's lymphoma was a producing cause of his alleged inability to treat his lymphoma sooner. SHC's alleged actions need not be the sole cause of the injury—it is enough that SHC's alleged actions were a producing cause of Martinez's injury. *Id.* at 100, 912 P.2d at 1329 (industrial injury does not need "to be the sole cause of the injury but merely must be a producing one") (quotations and citation omitted). Therefore, Martinez's inability to discover and treat his cancer sooner is based on circumstances that arose out of and occurred during the course of his employment. The exclusivity provision of the Act thus preempted Martinez's negligence claim against SHC.

**¶22**         In reaching this conclusion, we acknowledge a case not cited by the parties either in the superior court or on appeal, *Sill v. Indus. Comm'n*, 12 Ariz. App. 6, 467 P.2d 81 (1970), which involved circumstances that, at first blush, seem similar to the circumstances presented here. In *Sill*, the employee, a registered nurse, was employed by an Arizona hospital. *Id.* at 7, 467 P.2d at 82. As a condition of her employment, the hospital required her to have a yearly chest x-ray to determine the presence or absence of TB. *Id.* The employee learned she was suffering from acute TB in 1966 as a consequence of a chest x-ray taken that year. *Id.* The Industrial Commission found she had not sustained a compensable industrial injury. *Id.* On appeal, she argued "that an 'accident' arose when the radiologist employed by the [hospital] failed to correctly diagnose her beginning symptoms of tuberculosis which were evident, it is uncontradicted, in" a chest x-ray taken in 1965. *Id.* at 8, 467 P.2d at 83. After analyzing what is an accident arising out of and in the course of employment under the Act, this court rejected the employee's argument:

---

[5]Although the Act has unique provisions applicable to "heart-related or perivascular" issues that were applicable in *Dugan* but are not applicable here, that difference does not alter the applicability of *Dugan* to the preemption issue presented here.

> The evidence in the instant case establishes that the petitioner had the disease in its beginning stages at the time of her first employment X ray. Thereafter, the disease became worse as the result of its natural progression and not due to any risk inherent in the employment. It is the opinion of the Court that the failure of the doctors to diagnose the tuberculosis was not an 'accident' within the meaning of the Workmen's Compensation Act.

*Id*. at 8-9, 467 P.2d at 83-84.

¶23 *Sill* does not change our conclusion that Martinez's negligence claim against SHC arose out of an accident and in the course of his employment for SHC. First, unlike the situation in *Sill,* SHC provided preventive medical services to Martinez in connection with his actual exposure to a potential occupational hazard while working, and the injury he sustained occurred in the course of those preventive medical services. Second, the conduct and injury alleged by the employee in *Sill* are different from what Martinez alleged here. In *Sill*, the conduct and injury as framed by the employee was whether the radiologist's failure to correctly diagnose her beginning TB symptoms in 1965 constituted an accident. *Id*. Here, the conduct that formed the basis of Martinez's medical negligence claim against SHC occurred when he was being screened for TB after being exposed to a potential occupational hazard while working for SHC as a transporter, and the injury he alleged was that in failing to notify him of the results of his chest x-ray, SHC and the radiologist injured him by depriving him of the opportunity to discover and treat his cancer earlier. Third, and perhaps most importantly, even if we were to consider these factual distinctions immaterial, we cannot square the result reached in *Sill* with the authorities discussed above concerning when an accident arises out of and in the course of employment under the Act.

¶24 Martinez also argues the superior court should not have granted summary judgment in favor of SHC because disputed issues of material fact existed. Specifically, Martinez argues the parties' dispute as to whether he suffered an industrial injury constitutes a factual dispute. Whether an employee's injury arose out of and in the course of employment is a question of law, however. *Keovorabouth v. Indus. Comm'n*, 222 Ariz. 378, 381, ¶ 8, 214 P.3d 1019, 1022 (App. 2009); *see also supra* ¶ 13. Further, the parties do not dispute the material facts regarding Martinez's exposure to TB, the sequence of events that led to his x-ray, and its subsequent non-disclosure. Thus, whether Martinez suffered an industrial injury is a legal

dispute, and for the reasons discussed above, the superior court properly granted summary judgment.

IV.     The Dual Capacity Doctrine

¶25     Martinez also argues the superior court should not have granted summary judgment in favor of SHC because SHC was acting as a healthcare provider, not as his employer, under the dual capacity doctrine. Under the dual capacity doctrine:

> [A]n employer who normally is shielded from tort liability by the exclusivity of workers' compensation may be held liable to an injured worker if the employer acted in a capacity which conferred on it obligations apart from those as an employer and the worker's injury arose out of this other assumed role.

*Dugan*, 185 Ariz. at 101, 912 P.2d at 1330. Martinez specifically argues that SHC stepped into the role of Martinez's healthcare provider when it directed Martinez to obtain the skin test and subsequent x-ray. Thus, he argues SHC was acting on its obligations as a healthcare provider, not as his employer.

¶26     Although Arizona courts have discussed the dual capacity doctrine, no reported Arizona case has applied it, and indeed, in *Hills v. Salt River Project Assoc.*, 144 Ariz. 421, 425, 698 P.2d 216, 220 (App. 1985), this court stated the doctrine was inconsistent with the exclusivity provision of the Act and came close to rejecting it. *See also Delbridge*, 182 Ariz. at 53, 893 P.2d at 53 (collecting cases; dual capacity doctrine conflicts with public policy and is contrary to the exclusivity provision). Even assuming, however, that the doctrine has some viability in Arizona, the doctrine does not apply here.

¶27     Under the dual capacity doctrine, an employer can be subject to a tort claim only if the employer "possess a second persona so completely independent from and unrelated to his status as employer that by established standards the law recognizes it as a separate legal person." *Dugan*, 185 Ariz. at 101, 912 P.2d at 1330. SHC required Martinez to submit to diagnostic TB testing to determine whether he had been exposed to a work-related occupational hazard. Martinez did not independently seek out medical care from SHC; SHC ordered the diagnostic testing because its employee had been potentially exposed to TB while "on-the-job," and the testing was directly related to his employment as a transporter. At no time

did SHC act outside of its employment relationship with Martinez. *See Diaz*, 190 Ariz. at 552, 950 P.2d at 1173 (rejecting dual capacity doctrine when employer did not assume role independent from that of employer during attempt to rescue employee but simply assumed obligations it already owed to employee as employer). Therefore, even if the dual capacity doctrine remains viable under Arizona law, it is inapplicable here.

## CONCLUSION

**¶28** For the foregoing reasons, we affirm the superior court's summary judgment in favor of SHC. Pursuant to A.R.S. § 12-341 (2016), we award SHC costs on appeal contingent upon its compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA