STAR INSURANCE COMPANY, APPELLANT, *v.* WILLIAM NEIGHBORS; FAULKNER & COMPANY; AND STATE OF NEVADA DIVISION OF INDUSTRIAL RELATIONS OF THE DEPARTMENT OF BUSINESS AND INDUSTRY, RESPONDENTS.

No. 42926

July 20, 2006

138 P.3d 507

*Beckett, Yott & McCarty* and *Laurie A. Yott*, Reno; *Berman, Berman & Berman, LLP*, and *Spencer A. Schneider*, Los Angeles, California, for Appellant.

*Barbara A. Wall*, Nevada Attorney for Injured Workers, Carson City, for Respondent Neighbors.

*Nancy E. Wong*, Carson City, for Respondent State of Nevada Department of Business and Industry, Division of Industrial Relations.

Before MAUPIN, GIBBONS and HARDESTY, JJ.

## OPINION

By the Court, MAUPIN, J.:

In this case, we consider whether a workers' compensation insurer may avoid payment of a claim submitted under retroactive coverage procured by employer fraud. We hold that the fraud in this instance voids the retroactive coverage from its inception and that NRS 616B.033, governing rights as between workers' compensation insurers and the injured employees, does not negate a fraud

defense as asserted by the insurer below. We also consider whether the worker in this case may claim benefits from the Uninsured Employers' Claim Account (UECA) under NRS 616C.220, as amended after the date of the workplace accident in this case. We conclude that the expansion of employee rights under that amendment must be prospectively applied.

## FACTS AND PROCEDURAL HISTORY

Respondent Faulkner and Company operated a marginally funded roofing concern in the northern Nevada area and, as this case demonstrates, engaged in the rather unscrupulous practice of hiring cheap labor to engage in dangerous undertakings without providing current workers' compensation insurance.

In July 2001, Faulkner and Company engaged respondent William Neighbors as a day laborer to assist with a roofing job in South Lake Tahoe, California. While carrying materials up a ladder, Neighbors lost his footing and fell twenty feet, landing partially on his head and neck. Neighbors sustained serious brain and chest injuries, rendering him incompetent and requiring appointment of a public guardian to represent him in his affairs.

On the day following the accident, Richard Faulkner, the owner of the business, requested that appellant, Star Insurance Company, reinstate his workers' compensation insurance, which had lapsed the previous March for nonpayment of premium. As a condition to reinstatement, Star required payment of $1,800, the unpaid premium amount, and a letter from Faulkner verifying that no known losses had occurred during the cancellation period. Faulkner fraudulently complied, knowing that Neighbors had sustained catastrophic injuries, and Star reinstated the policy.

Shortly thereafter, Neighbors submitted a claim for workers' compensation benefits. Star denied the claim in writing, asserting that the policy was void. Star then rescinded the policy, stating in the notice of rescission that Faulkner misrepresented that he had no known losses during the lapsed period. Star later returned the $1,800. Faulkner was criminally charged with concealing a material fact in an insurance application and for operating a business without industrial insurance. Faulkner paid approximately $500 in fines and spent two days in jail. He also declared bankruptcy and obtained a discharge of debtor.

Through his public guardian, Neighbors appealed Star's denial of his claim to the Nevada Department of Administration. A hearing officer reversed the claim denial, and an appeals officer upheld the hearing officer's decision. As part of its ruling, the appeals officer indicated that, in no event, was Neighbors entitled to claim benefits under the UECA. The district court denied Star's petition for judicial review. Star appeals.

## DISCUSSION

*Fraudulent policy procurement and NRS 616B.033*

On appeal, Star asserts that the appeals officer and the district court erroneously interpreted NRS 616B.033 to require Star to pay Neighbors compensation. NRS 616B.033(2) provides, in pertinent part, as follows:

> No statement in an employer's application for a policy of industrial insurance voids the policy as between the insurer and employer unless the statement is false and would have materially affected the acceptance of the risk if known by the insurer, but in no case does the invalidation of a policy as between the insurer and employer affect the insurer's obligation to provide compensation to claimants arising before the cancellation of the policy. If the insurer is required pursuant to this subsection to provide compensation under an invalid policy, the insurer is subrogated to the claimant's rights against the employer.[1]

Although we, like the district court, review an appeals officer's factual determinations for clear error or abuse of discretion, questions of law, including questions of statutory interpretation like the one presented in this appeal, are reviewed independently.[2] When the text of a statute is plain and unambiguous, a court should impart it with ordinary meaning and not go beyond that meaning.[3] If a statute is ambiguous, meaning that it is susceptible to differing reasonable interpretations, "the statute should be construed consistently with what reason and public policy would indicate the Legislature intended."[4] Going further, we must construe ambiguous statutes so as to avoid absurd results.[5]

Star points to the language in NRS 616B.033(2), providing that "[n]o statement in an employer's application for a policy of industrial insurance voids the policy as between the insurer and employer unless the statement is false and would have materially affected the acceptance of the risk if known by the insurer." Star asserts that this language supports its ability to rescind, rendering

---

[1]An injured employee may seek individual recovery against an uninsured employer. Star's subrogation to these rights is now illusory given Faulkner's discharge in bankruptcy.

[2]*Construction Indus. v. Chalue*, 119 Nev. 348, 351, 74 P.3d 595, 597 (2003); *Banegas v. SIIS*, 117 Nev. 222, 225, 19 P.3d 245, 247 (2001).

[3]*Banegas*, 117 Nev. at 225, 19 P.3d at 247.

[4]*Id.*

[5]*See California Commercial v. Amedeo Vegas I*, 119 Nev. 143, 145, 67 P.3d 328, 330 (2003).

the policy void *ab initio* and placing the parties in the positions they occupied before executing the contract. The problem with this analysis comes from the remainder of the text of subsection two:

> [B]ut in no case does the invalidation of a policy as between the insurer and employer affect the insurer's obligation to provide compensation to claimants arising before the cancellation of the policy.[6]

NRS 616B.033(2) clearly precludes defenses to employee claims against coverage in place at the time of an accident based upon employer misconduct, coverage upon which employees have a right to rely. However, the phrase, "in no case does the invalidation of a policy as between the insurer and employer affect the insurer's *obligation to provide compensation* to claimants arising before the cancellation," does not clearly apply to retroactive insurance which, by definition, did not exist at the time of the injury. (Emphasis added.) Certainly, an obligation to provide compensation under the statute is normally stimulated by an accident, the obligation normally arises under pre-existing coverage, and the term "cancellation" normally presumes the discontinuation of a pre-existing policy.[7] Further, an anomalous situation occurs where the employer fraudulently seeks to create the "obligation to provide compensation" after the fact. Thus, when the employer has fraudulently procured retroactive or back-dated insurance for the explicit purpose of obtaining coverage for a pre-existing loss, a latent ambiguity arises in connection with the scope of NRS 616B.033(2).[8] In resolving the ambiguity, we must take a neutral approach to interpreting the statute.[9] In this, we must examine the purposes of the provisions.

NRS 616B.033(2) addresses a number of issues. First, it protects employers from losing required coverage through rescission or cancellation based upon nonmaterial misrepresentations in the employer's application for coverage. Second, subject to enumerated exceptions, it allows the insurer to rescind or cancel coverage at any time during the policy period based upon a material misrepresentation in the application for coverage. Third, while this right exists as between the employer and the insurer, it does not affect

---

[6]NRS 616B.033(2).

[7]*See Vest v. Richardson*, 253 So. 2d 97, 101 (La. Ct. App. 1971); *United Sec. Ins. Co. v. Commissioner of Ins.*, 348 N.W.2d 34, 35 (Mich. Ct. App. 1984); *see also* 2 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance 3d* § 30:3 (1995); 8B John Alan Appleman & Jean Appleman, *Insurance Law and Practice* § 5011 (1981).

[8]*Rubin v. State Farm*, 118 Nev. 299, 43 P.3d 1018 (2002).

[9]*See* NRS 616A.010. Under the common law prior to the enactment of NRS 616A.010, we would have to construe NRS 616B.033 in favor of coverage.

compensation owed for injuries sustained before the exercise of rescission or cancellation rights. Thus, the measure prohibits the practice of "post-accident" underwriting, *i.e.*, claim avoidance under a pre-existing policy, based upon an act of fraud that is totally unrelated to the subsequent claim or otherwise. Finally, the measure gives the insurer a limited remedy against the employer if the insurer is required to pay benefits under a policy induced by the employer's fraud.

Star concedes that NRS 616B.033(2) gives the insurer the right to rescind a pre-accident policy acquired by fraud in the application as to the employer but not the employee. Accordingly, as to an employee injured during the policy period, the insurer may only cancel prospectively. The net effect of this choice of language, Star reasons, is that a pre-existing policy is merely voidable at the election of the insurer. This being the case, the statute cannot be construed to create rights under a policy issued after the accident, which is void from the beginning. We agree.

This is not a case of post-accident underwriting with regard to an existing policy. In other words, Star is not attempting to avoid coverage it had placed before an accident based upon misconduct that is in no way related to the claim in question. In this instance, Faulkner obtained the policy by fraud to get coverage for this particular claim. To avoid the absurd result of allowing an employer to fraudulently obtain back-dated coverage, other courts have refused to impose coverage upon insurers that have been induced by fraud to issue retroactive insurance.[10] We agree with the position taken by the courts from our sister states, including the Kansas court in *Matlock v. Hollis*,[11] in which the court stated:

> The distinction between a fraudulent concealment of a loss already suffered, in order to secure insurance coverage of such loss, and fraudulent representations as to other matters which might or might not have led the insurance carrier to refuse the risk, is apparent. If A applies for fire insurance upon a building and fraudulently represents that he has had no fire losses, the policy may be voidable and subject to cancellation by the insurer upon discovery that the insured had had losses under circumstances making the new risk undesirable. But if he applies for insurance knowing that the building has already been destroyed by fire, conceals the fact of the prior loss and secures a policy antedated to cover the time of the loss, the policy is void and no liability ever attaches. . . .

---

[10]*See General Acc., F. & L. Assur. Corp. v. Industrial Acc. Com'n*, 237 P. 33, 37 (Cal. 1925); *Matlock v. Hollis*, 109 P.2d 119, 126 (Kan. 1941); *Century Indemnity Company v. Jameson*, 131 N.E.2d 767, 769 (Mass. 1956).

[11]109 P.2d 119.

. . . .

It is obvious that the principle of estoppel, which has been suggested, cannot here be invoked to bind the insurance company. It voluntarily antedated the policy and accepted the risk of possible injuries, unknown to either party, which might have occurred within the antedated period. But it would be preposterous to assume that it voluntarily took on liability for a serious injury known to the employers, and the appellee is not charged with any act or conduct which misled the employers.

. . . .

The conclusion is inescapable that the concealment of the injury went to the very heart of the contract, made it void at its inception, and no one can predicate any rights upon it. Under such facts, "public policy" as well as elementary principles of law, support the finding of the trial court that "[the employer], *having no rights* under said policy as against the insurance company by reason of their fraud, could not create for the claimant, [employee], a right of recovery as against the company, *which right of recovery he did not have at the time of the injury.*" . . . . And it must be equally clear that the fact that under the contract, if valid, or perhaps if voidable only and uncancelled at the time of injury, the employee would have a direct right of action against the insurance company, cannot prevail to give a right of action under a contract void at its inception. The argument urged by appellee that refusal to validate the policy takes from the employee no rights, no relief, to which he was entitled when the accident occurred, is wholly in harmony with what has already been said. It is in fact implicit in the legal principles we have discussed. He is not deprived of any rights, actual, apparent or potential, then existing. Had the policy been merely voidable through fraudulent representations not affecting the very existence of a risk, a different question would be presented.[12]

Construing the statute consistently with its intent, to give employees the benefit of coverage on which they have a right to rely in either commencing or continuing employment, and to avoid an absurd result, we conclude that, when the "obligation to provide compensation" under this statute is itself procured by post-accident fraud, NRS 616B.033(2) does not operate to retroactively impose coverage. Doctrinally, workers' compensation coverage procured by fraud in an application pre-dating a workplace accident may only

---

[12]*Id.* at 124-26 (alteration in original).

later be canceled prospectively as to the employee after an accident. The coverage is therefore only "voidable" prospectively as to the employee, not void from its inception. However, a policy procured by fraud for the purpose of creating the obligation to compensate a pre-existing loss is void from the beginning. In this, Professor Larson notes:

> The only situation in which the insurance would be defeated for all purposes by act of the employer is that in which the insurance is absolutely void *ab initio*, rather than voidable; this would occur if the employer attempted to insure against an accident that had already occurred, by pre-dating the insurance and fraudulently concealing the known existence of an accident within the period so covered.[13]

Faulkner fraudulently obtained coverage after the accident, and Star would most certainly have declined to issue the policy had it known it was assuming a catastrophic injury claim. This being the case, none of Faulkner's employees could have undertaken or continued employment in reliance upon existing workers' compensation coverage. Going further, Faulkner could not, as a matter of law, fraudulently create a right of recovery for Neighbors that he did not have at the time of his injury. Accordingly, we hold that the fraud and the timely rescission rendered the coverage void from its reinstatement. Although little purpose exists in obtaining retroactive coverage if the policy has no retroactive effect, absent the fraud, the coverage would have been restricted to claims unknown to the insured employer.

### Retroactive application of NRS 616C.220

Star and Neighbors assert that Neighbors may claim workers' compensation benefits under the Nevada Uninsured Employers' Claim Account (UECA).[14] We disagree. As of the date of Neighbors' injury, NRS 616C.220(2), the operative provision governing claims against the UECA, provided that only an employee who "suffer[s] an accident or injury in this state which arises out of and in the course of his employment" may receive compensation from the UECA. Thus, relief from the UECA was unavailable to claimants who, like Neighbors, were injured outside Nevada. However, effective October 1, 2001,[15] after Neighbors' accident, NRS

---

[13]9 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 150.02[4], at 150–12 (2006).

[14]This, of course, assumes the result reached on the issue of Star's coverage.

[15]*See* 2001 Nev. Stat., ch. 550, §§ 22, 25, at 2739, 2743.

616C.220(2) was amended to allow such claims. The amended version provides as follows:

> Except as otherwise provided in this subsection, an employee may receive compensation from the uninsured employers' claim account if:
>
> (a) He was hired in this State or he is regularly employed in this State;
>
> (b) He suffers an accident or injury which arises out of and in the course of his employment:
>
> (1) In this State; or
>
> (2) While on temporary assignment outside the State for a period of not more than 12 months;
>
> (c) He files a claim for compensation with the Division; and
>
> (d) He makes an irrevocable assignment to the [Division of Industrial Relations] of a right to be subrogated to the rights of the injured employee pursuant to NRS 616C.215.
>
> An employee who suffers an accident or injury while on temporary assignment outside the State is not eligible to receive compensation from the uninsured employers' claim account unless he has been denied workers' compensation in the state in which the accident or injury occurred.

Citing *Madera v. SIIS*,[16] Star and Neighbors assert that the current version of NRS 616C.220 should apply retroactively to Neighbors' claim. In *Madera*, this court determined that a statute prohibiting the filing or maintenance of actions alleging "bad faith" administration of workers' compensation claims applied retroactively to bar such actions that had already been commenced, but not yet reduced to judgment, as of the statute's effective date.[17] The court stated that statutes are presumptively prospective but that the presumption is inapplicable when the statute affects only remedies.[18] The *Madera* court determined that the statute at issue in that case affected only remedies because it supplanted a common-law tort remedy with an administrative remedy.[19] The court also concluded that the statutory text reflected legislative intent that the statute be applied retroactively.[20]

We reject the argument that *Madera* controls. Neither the statute's text nor legislative history conclusively indicates an inten-

---

[16] 114 Nev. 253, 956 P.2d 117 (1998).

[17] *Id.* at 255, 956 P.2d at 118-19.

[18] *Id.* at 257, 956 P.2d at 120.

[19] *Id.* at 258, 956 P.2d at 120.

[20] *Id.* at 258-59, 956 P.2d at 121 (concluding that use of the words "brought and maintained" indicated legislative intent for the statute to operate retroactively to lawsuits in progress as of the date of enactment).

tion to render the statute retroactively operable. Even if the current version of NRS 616C.220 did retroactively apply to Neighbors' claim, the record lacks evidence indicating that Neighbors has satisfied a current prerequisite for UECA eligibility—that he has applied for and been denied workers' compensation in California, the state in which the injuries occurred.

## CONCLUSION

We conclude that NRS 616B.033 does not require Star to pay Neighbors' claim. We also conclude that the current version of NRS 616C.220 has no retroactive application to Neighbors' claim. Accordingly, we reverse the district court's order denying judicial review as to Star's obligation to provide coverage. We affirm the remainder of the district court's order.

GIBBONS and HARDESTY, JJ., concur.

