**134 Nev., Advance Opinion 71**
IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| ISRAEL BAIGUEN, AN INDIVIDUAL, Appellant, vs. HARRAH'S LAS VEGAS, LLC, A NEVADA DOMESTIC LIMITED LIABILITY CORPORATION, D/B/A HARRAH'S CASINO HOTEL, LAS VEGAS; AND CAESARS ENTERTAINMENT CORPORATION, A NEVADA FOREIGN CORPORATION, D/B/A HARRAH'S CASINO HOTEL, LAS VEGAS, Respondents. | No. 70204 <br><br> FILED <br> SEP 13 2018 <br> ELIZABETH A. BROWN <br> CLERK OF SUPREME COURT <br> BY <br> CHIEF DEPUTY CLERK |



Appeal from summary judgment in a tort action. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge.

*Affirmed.*

The Galliher Law Firm and Jeffrey L. Galliher, Las Vegas; Law Offices of Steven M. Burris, LLC, and Steven M. Burris and Adrian A. Karimi, Las Vegas,
for Appellant.

Fisher & Phillips LLP and Scott M. Mahoney, Las Vegas,
for Respondents.

---

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, PICKERING, J.:

The Nevada workers' compensation system provides the exclusive remedy an employee has against his or her employer for a work-

18-35747

related injury. This case requires us to decide whether an injury arising from an employer's failure to provide medical assistance to an employee suffering a stroke arose out of and in the course of the employment. We hold that it did. Because an employee's sole remedy for such an injury is workers' compensation, we affirm summary judgment for the employer.

## I.

Israel Baiguen was suffering a stroke when he arrived for work as a Harrah's houseperson. Baiguen parked his car in the employee-only parking garage and met with coworkers on the second floor of the garage about 15 minutes before his shift. His coworkers noted that he was drooling and unresponsive to questions. He then went with a coworker to the employee-only clock-in area at the housekeeping office in the basement of Harrah's, where he walked around disoriented, then waited in line to receive his keys and radio for his shift. While Baiguen waited for his keys and radio, his immediate supervisor asked him a question; when Baiguen did not respond, the coworker said that Baiguen was "not good." Observing that Baiguen was drooling, and that his face was drooping, the supervisor notified a manager that Baiguen was "not fine." The manager told Baiguen that he could not work, and when the coworker volunteered to help Baiguen, the manager allowed the coworker to find Baiguen a ride home.

Baiguen never left the employee-only areas of Harrah's to begin his shift. Two coworkers on the outgoing shift drove Baiguen home, unlocked his front door for him, helped him change clothes, and then left after about 30 minutes. Baiguen remained in the apartment for two days until his girlfriend stopped by, discovered that he was unable to talk and drooling, and drove him to the hospital.




The only FDA-approved treatment for Baiguen's type of stroke at the time was a blood-clot-busting medication called tissue plasminogen activator (t-PA). As a diabetic, Baiguen had an approximately three-hour window after exhibiting stroke symptoms for the t-PA to be administered. When timely administered, t-PA increases by 30 percent the chance that a patient will fully recover from the stroke with minimal or no disability. Even so, t-PA carries a risk of internal bleeding and death; the drug is not a guaranteed fix, but rather a way to help improve a stroke victim's chances of recovery. Baiguen did not receive t-PA following his stroke, because he was not treated within the three-hour window.

Baiguen sued Harrah's in district court for failure to aid him during the "golden window" of diagnostic and treatment opportunity. The district court granted summary judgment to Harrah's, finding that Baiguen's exclusive remedy was workers' compensation, because the injury occurred in the workplace and arose out of his employment with Harrah's. Baiguen appealed and the case was transferred to the court of appeals. The court of appeals reversed. We granted Harrah's petition for review, vacated the decision of the court of appeals, and affirm the district court's summary judgment order.

## II.

We review a district court's grant of summary judgment de novo. *Wood v. Safeway, Inc.*, 121 Nev. 724, 729, 121 P.3d 1026, 1029 (2005). Summary judgment is appropriate if the evidence "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." NRCP 56. "[T]he evidence, and any reasonable inferences drawn from it, must be viewed in a light most favorable to the nonmoving party." *Wood*, 121 Nev. at 729, 121 P.3d at 1029.

The Nevada Industrial Insurance Act (NIIA) provides the exclusive remedy for an employee against his employer when the employee sustains an injury "arising out of and in the course of the employment." NRS 616A.020(1); *see Wood*, 121 Nev. at 732, 121 P.3d at 1031 ("The NIIA provides the exclusive remedy for employees injured on the job, and an employer is immune from suit by an employee for injuries 'arising out of and in the course of employment.'"). In exchange for the NIIA provisions and protections, covered employees and employers give up their common law remedies and defenses for workplace injuries. NRS 616A.010(3) (workers' compensation is "based on a renunciation of the rights and defenses of employers and employees recognized at common law"); *see also Millersburg Military Inst. v. Puckett*, 260 S.W.3d 339, 341 (Ky. 2008) ("Workers' compensation is a statutory creation under which workers and employers agree to forego common law remedies/liability for workplace injuries . . . ."). Thus, when an employee's injury occurs within the course of the employment and arises out of the employment, the employer is liable under the NIIA, and the employee may not sue the employer in court for negligence.

## A.

Baiguen argues that Harrah's failure to respond to his stroke did not occur within the course of his employment, and therefore is not covered by workers' compensation, because he had not clocked in yet and his symptoms prevented him from performing any work duties. "[W]hether an injury occurs within the course of the employment refers merely to the time and place of employment, *i.e.*, whether the injury occurs at work, during working hours, and while the employee is reasonably performing his or her duties." *Wood*, 121 Nev. at 733, 121 P.3d at 1032. But there is no

requirement that the employee actually be capable of performing job duties or be actively engaged in those job duties at the time of the injury for it to occur in the course of employment. *See, e.g., Dugan v. Am. Express Travel Related Servs. Co.*, 912 P.2d 1322, 1330 (Ariz. Ct. App. 1995) (rejecting employee's argument that she could not be in the course of employment when she was incapacitated due to a brain injury). And even accepting Baiguen's allegation that he did not clock in for work,[1] it remains undisputed that Baiguen was on Harrah's premises at his regularly scheduled time to work and that he was in line to receive his radio and keys when Harrah's approved the plan to have two coworkers drive him home.

In *Mirage v. Cotton*, we held that "injuries sustained on the employer's premises while the employee is proceeding to or from work, within a reasonable time, are sufficiently connected with the employment to have occurred 'in the course of employment.'" 121 Nev. 396, 400, 116 P.3d 56, 58 (2005), *quoting Norpac Foods, Inc. v. Gilmore*, 867 P.2d 1373, 1376 (Or. 1994). There, a woman tripped over a curb and injured her ankle walking from her employer's parking lot to the entrance of the employer's building ten minutes before her shift. *Id.* Here, Baiguen parked in the

---

[1]The parties dispute whether Baiguen clocked in to work. In Harrah's reply to Baiguen's opposition to the motion for summary judgment, Harrah's attached an affidavit from an employee that Baiguen clocked in on the day in dispute. Baiguen refutes this by pointing to evidence not in the record and statements by witnesses who claimed not to know whether Baiguen clocked in. While this may not create a genuine dispute of material fact, *see Wood*, 121 Nev. at 732, 121 P.3d at 1031 (recognizing that the nonmoving party must show more than "that there is some metaphysical doubt" and cannot rely on "gossamer threads of whimsy, speculation, and conjecture"), we need not decide whether it does because the remaining undisputed facts are sufficient to establish that Baiguen's injury occurred in the course of his employment.

Harrah's employee lot, walked to an area where employees typically gather before their shift, entered the back area of the building where employees clock in, and got in line to receive his radio and keys as his shift was about to begin. Under *Cotton*, Harrah's alleged failure to aid Baiguen occurred in the course of Baiguen's employment.

## B.

Baiguen also argues that his injury did not arise out of his employment. An injury arises out of the employment "when there is a causal connection between the employee's injury and the nature of the work or workplace." *Wood*, 121 Nev. at 733, 121 P.3d at 1032. It is not enough that an employee was at work and suffered an injury. *See Rio Suite Hotel & Casino v. Gorsky*, 113 Nev. 600, 605, 939 P.2d 1043, 1046 (1997) ("merely being at work and suffering an injury" is insufficient to show that the injury arose out of the employment). Rather, "the employee must show that 'the origin of the injury is related to some risk involved within the scope of employment.'" *Rio All Suite Hotel & Casino v. Phillips*, 126 Nev. 346, 350, 240 P.3d 2, 5 (2010) (quoting *Mitchell v. Clark Cty. Sch. Dist.*, 121 Nev. 179, 182, 111 P.3d 1104, 1106 (2005)). If the injury "is not fairly traceable to the nature of the employment or workplace environment, then the injury cannot be said to arise out of the claimant's employment." *Gorsky*, 113 Nev. at 604, 939 P.2d at 1046.

### 1.

An employee might encounter three types of risks at work: (1) employment; (2) personal; and (3) neutral. *See Phillips*, 126 Nev. at 351, 240 P.3d at 5. Employment risks arise out of the employment. *Id.* They are solely related to the employment and include obvious industrial injuries. *Id.*; *see also* 1 Arthur Larson and Lex K. Larson, *Larson's Workers'*

*Compensation Law* § 4.01, at 4-2 (rev. ed. 2017) (classic employment risks include "machinery breaking, objects falling, explosives exploding, tractors tipping, fingers getting caught in gears, excavations caving in, and so on" as well as "occupational diseases").

On the other hand, personal risks do not arise out of the employment. *Phillips*, 126 Nev. at 351, 240 P.3d at 6. Personal risks include injuries caused by personal conditions and illnesses, such as falling at work due to "a bad knee, epilepsy, or multiple sclerosis." *Phillips*, 126 Nev. at 351, 240 P.3d at 5; *see also* Larson, *supra* § 4.02, 4-2 (examples of personal risks include dying a natural death, the effects of disease or internal weakness, and death by "mortal personal enemy").

Finally, a neutral risk is a risk that is neither an employment risk nor a personal one, such as a fall that is not attributable to premise defects or a personal condition. *Phillips*, 126 Nev. at 351, 240 P.3d at 5; *see also* Larson, *supra* § 4.03, at 4-2 (examples of neutral risks include "hit by a stray bullet out of nowhere, bit by a mad dog, stabbed by a lunatic running amuck," acts of God, and unknown causes). A neutral risk arises out of the employment if the employee was subjected to a greater risk than the general public due to the employment. *See Phillips*, 126 Nev. at 353, 240 P.3d at 7 (adopting the increased-risk test).

Under some circumstances, the risk may be mixed. A mixed risk is "a personal cause and an employment cause combin[ing] to produce the harm." Larson, *supra* § 4.04, at 4-3. A classic example of an injury from a mixed risk is "a person with a weak heart who dies because of strain occasioned by the employment." *Id.* A mixed risk arises out of the employment if the employment risk was a contributing factor in the injury. *Id.*

 

Both parties agree that Baiguen's employment at Harrah's did not cause his stroke. They disagree, however, about whether Baiguen's alleged injuries in this suit—the lost chance of recovery and the exacerbated effects of his stroke due to delayed medical assistance—constituted a personal risk, a neutral risk, or an employment risk. Baiguen argues that his injuries were a personal risk, and therefore did not arise out of his employment, which would allow him to sue Harrah's in tort and avoid the workers' compensation bar. He alternatively argues that even if it was a neutral risk, the injuries did not arise out of the employment because he faced the same risk that Harrah's would not come to his aid as any other Harrah's guest or visitor. Conversely, Harrah's argues that Baiguen's alleged injury is the lost chance of recovery due to Harrah's alleged failure to properly train employees or obtain medical assistance for Baiguen—an employment risk.

Baiguen urges a neutral risk analysis, but the personal origin of his stroke defies a neutral risk analysis. *See* Larson, *supra* § 7.04(1)(b), at 7-28 ("Whenever personal disease or weakness contributes to the [injury], an entirely new set of rules comes into play, since the risk is no longer neutral but either personal or, perhaps, 'mixed.'"). A neutral risk is a risk that is not related to either a personal risk or an employment risk; it is not a risk that is a combination of a personal risk and an employment risk. *See id.* § 4.03, at 4-2 (defining neutral risks as "of *neither* distinctly employment *nor* distinctly personal character") (emphasis added). We conclude that Baiguen's alleged injuries are the result of a mixed risk—the personal risk that he could have a stroke, and the employment risk that if he had a stroke at work his employer might fail to render appropriate aid. *See id.* § 4.04, at 4-3.

Baiguen's stroke itself constituted a personal risk. But his claim is not that Harrah's caused his stroke; rather, that its inadequate response to his stroke symptoms cost him his window of treatment opportunity, turning a treatable medical incident into a catastrophic injury. That Harrah's might respond inadequately to Baiguen's stroke in the workplace, due to inadequate workplace policies, procedures, or training, or fail to follow existing policies, procedures, and training, is a risk related to Baiguen's employment. Such inadequate policies, procedures, and training are conditions of the workplace akin to well-recognized physical hazards, like the risk that the injury from a painter's stroke will be worsened by falling off a ladder, or an epileptic cook who suffers a seizure and burns himself on a stove. *See, e.g., Dudley v. Victor Lynn Lines, Inc.*, 161 A.2d 479, 486 (N.J. 1960). Thus, where an injury at work was exacerbated by the absence of (or failure to adhere to) a policy, procedure, or the necessary training to allow other employees to properly respond to such an injury, the workplace contributed to the injury and it arose out of the employment. *Id.* at 487 ("In these situations, the parallel operative facts are (1) a non-work-connected injury, (2) a common-law duty arising in another to take care to procure medical aid, (3) non-procurement of that aid for a reason related to the employment, and (4) resulting [injury].").

For example, in *Dugan*, an employee with a history of heart problems suffered a "heart event" at work. 912 P.2d at 1325. But when her coworkers tried to call 9-1-1 they could not reach the emergency dispatcher, because, unknown to them, the employer had blocked 9-1-1 "in favor of an in-house emergency number." *Id.* Because the coworkers could not summon emergency help, medical assistance was delayed and the employee suffered irreversible brain damage from prolonged oxygen deprivation. *Id.*

The court held that "[w]hen an industrial injury aggravates a pre-existing physical condition or combines with the pre-existing condition to produce an additional injurious effect, the employee is entitled to [workers'] compensation for losses attributable to the further harm." *Id.* at 1329. By blocking any calls to 9-1-1, the employer delayed the employee's necessary medical treatment, which aggravated or contributed to the brain injury from the employee's personal heart condition. *Id.*

Similarly, Baiguen alleges that decisions by Harrah's employees exacerbated the effects of his stroke and cost him a 30-percent chance of recovery by preventing timely administration of the t-PA medicine. Just as the employer's decision in *Dugan* to block 9-1-1 access, Harrah's negligence, if any, was inextricably linked to Harrah's workplace conditions, including its policies, procedures, and training related to recognizing and providing medical assistance for medical events occurring in the workplace.

### 2.

"In Nevada, as under the common law, strangers are generally under no duty to aid those in peril." *Lee v. GNLV Corp.*, 117 Nev. 291, 295, 22 P.3d 209, 212 (2001). But "where a special relationship exists between the parties," the law may impose an affirmative duty. *Id.* The relationship between an employer and its employee is one of those special relationships. *Id.* While its exact contours are disputed, the duty, by its very nature, arises out of the employer-employee relationship. *See Handzel v. Kane-Miller Corp.*, 614 N.E.2d 206, 208 (Ill. App. Ct. 1993) (because "there is no duty at common law to provide aid to an injured person . . . [w]hatever duty [the defendants] owed the decedent must necessarily arise out of the employer-employee relationship"). And where the duty is breached, the injury

 

resulting from the breach arises out of the employment. *See Vand. Univ. v. Russel*, 556 S.W.2d 230, 231 (Tenn. 1977) (explaining that an employer's negligent failure to render aid "[w]hen an employee becomes helpless in the course of employment due to illness or other cause not related to his employment" arises out of the employment); *Dudley*, 161 A.2d at 488 ("The breach of the assumed duty was the realization of a risk of the employment in exactly the same way as is a breach of the duty to render or procure emergency medical aid. And, in just the same way, [an injury] resulting from such breach of duty arises out of the employment.").

Baiguen claims that his injury does not arise out of his employment because Harrah's owed him the same duty under our law as any other person on Harrah's premises. *See Lee*, 117 Nev. at 296-97, 22 P.3d at 212 (discussing special relationships that create a duty to render aid to those in peril, such as innkeeper-guest, employer-employee, and restaurateur-patron). Even accepting this assertion as true, it is inapposite given that Baiguen's stroke occurred in an employee-only area and while in the course of his employment. *See Blakeslee v. Platt Bros. & Co.*, 902 A.2d 620, 625 (Conn. 2006) ("Compensability also may not be denied simply because the plaintiff could have been exposed to a similar risk of injury from the administration of aid had he suffered the seizure outside of work."). Baiguen was not a hotel guest or a restaurant patron; he was at Harrah's to work. And when he showed up for work, he remained in areas restricted to employees, where his only opportunity for aid was from his employer, Harrah's, or his coworkers. Under the facts before us, any duty on Harrah's part to render aid to Baiguen would have arisen out of the employer-employee relationship, not another special relationship such as innkeeper-guest or restaurateur-patron. *See Lee*, 117 Nev. at 296-97, 22 P.3d at 212.

SUPREME COURT
OF
NEVADA

(O) 1947A

11

Thus, while the NIIA's exclusive remedy provision cannot bar a guest or a patron from suing in court for negligence on facts analogous to these, the NIIA limits an employee's remedy to workers' compensation. *See* NRS 616A.020(1).

Baiguen's injuries occurred in the course of his employment and arose out of his employment such that workers' compensation is his exclusive remedy against Harrah's. We therefore affirm.

_____, J.
Pickering

We concur:

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich