**135 Nev., Advance Opinion 60**

IN THE SUPREME COURT OF THE STATE OF NEVADA

KAYCEAN BUMA, AS THE
SURVIVING SPOUSE, AND DELANEY
BUMA, AS THE SURVIVING CHILD OF
JASON BUMA (DECEASED),
Appellants,
vs.
PROVIDENCE CORP. DEVELOPMENT,
D/B/A MILLER HEIMAN, INC.; AND
GALLAGHER BASSETT SERVICES,
INC.,
Respondents.

No. 73632

**FILED**

DEC 12 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a petition for judicial review in a workers' compensation matter. Second Judicial District Court, Washoe County; Barry L. Breslow, Judge.

*Vacated and remanded with instructions.*

Diaz & Galt, LLC, and Charles C. Diaz, Reno,
for Appellants.

Lewis Brisbois Bisgaard & Smith LLP and John P. Lavery and Lee E. Davis, Las Vegas,
for Respondents.

BEFORE THE COURT EN BANC.

19-50477

*OPINION*

By the Court, PICKERING, J.:

To receive workers' compensation under the Nevada Industrial Insurance Act (NIIA), an employee must show that an "injury arose out of and in the course of his or her employment." NRS 616C.150(1). This rule generally requires that the injury happened at work and was due to the work itself or a condition of the workplace. This court has not addressed how these basic requirements apply to "traveling" employees—those whose employment entails travel away from the workplace.

Under the NIIA, "Travel for which an employee receives wages shall, for the purposes of [the act], be deemed in the course of employment." NRS 616B.612(3). Consistent with this statute is the majority rule that traveling employees are in the course of employment continuously during their business trips, except during distinct departures on personal errands. Such an employee's injuries arising out of travel- or work-related risks—including those associated with meeting basic personal needs (like sleeping in hotels or eating in restaurants) and navigating hazards necessarily incidental to the travel or work—are usually compensable unless an exception applies. NRS 616B.612(3) codifies this majority rule.

This case concerns a traveling employee, Jason Buma. He died in an all-terrain-vehicle (ATV) accident while on a required business trip for his employer, respondent Miller Heiman. Appellants Kaycean and Delaney Buma, Jason's wife and daughter, were denied workers' compensation death benefits, and the district court denied their petition for judicial review. We vacate and remand. We vacate the district court's order because the appeals officer failed to apply NRS 616B.612(3), and we remand for the appeals officer to reevaluate the matter under the correct standards.

 

## I.

Respondent Miller Heiman employed Jason Buma full-time as a vice president of sales. In that capacity, Jason split his time working from home in Reno, Nevada, and traveling out-of-state on business. He had no local clients or contacts, and he did not work out of Miller Heiman's Reno office. Jason enjoyed considerable discretion in carrying out his duties. He worked irregular hours, starting his day as early as 6 a.m. and sometimes working as late as 10 p.m. He was constantly on call, taking business calls at any hour on weekends, on vacations, and even "while hiking." He made his own travel arrangements.

Miller Heiman required Jason to travel on business, including annual trips to Houston, Texas, to attend an oil and gas conference. On these trips to Houston, Jason stayed with a local friend and independent affiliate of Miller Heiman, Michael O'Callaghan, who owned a ranch about a two-hour drive from Houston. Each year Jason and Michael attended the conference, Jason would stay at Michael's ranch, where he and Michael would prepare their joint presentations on Miller Heiman's behalf for the conference. The two would travel to and from Houston to attend the conference, meet with clients, and give presentations on Miller Heiman's services.

On his most recent trip, Jason flew from Reno to Houston on a Sunday and drove from the airport to Michael's ranch in the late afternoon. He and Michael had several joint presentations at the oil and gas conference to prepare for, with the first presentation scheduled for Monday morning at 8:30 a.m. Sometime after 5 p.m. on Sunday, Jason and Michael went on an ATV ride around the property, as they had on Jason's prior trips. While riding towards the end of a trail that led off the property, Jason rolled his ATV. He died at the scene.

Supreme Court
of
Nevada

(O) 1947A

Kaycean and Delaney Buma filed a workers' compensation claim for death benefits. Respondent Gallagher Bassett Services, Inc., the third-party administrator of Miller Heiman's workers' compensation plan, investigated the incident and denied the claim. The Bumas appealed the decision administratively. The hearing officer affirmed Gallagher Bassett's determination that Jason's death occurred during an activity that was not part of his work duties. The Bumas again appealed the decision, arguing that Jason traveled to the Houston area solely for the purpose of work. The appeals officer affirmed the denial. The Bumas then petitioned for, and the district court denied, judicial review. They now appeal from that order.

## II.

To receive workers' compensation under the NIIA, an injured employee (or his dependents) must show two things: "that the employee's injury arose *out of* and *in the course of* his or her employment." NRS 616C.150(1) (emphases added); *see MGM Mirage v. Cotton*, 121 Nev. 396, 400, 116 P.3d 56, 58 (2005) ("emphasiz[ing] that the inquiry is two-fold"). If "the injury occurs at work, during working hours, and while the employee is reasonably performing his or her duties," then the injury arises "in the course of employment" under NRS 616C.150(1). *Baiguen v. Harrah's Las Vegas, LLC*, 134 Nev. 597, 599, 426 P.3d 586, 590 (2018) (quoting *Wood v. Safeway, Inc.*, 121 Nev. 724, 733, 121 P.3d 1026, 1032 (2005)). "An injury arises out of the employment 'when there is a causal connection between the employee's injury and the nature of the work or workplace.'" *Id.* at 600, 426 P.3d at 590 (quoting *Wood*, 121 Nev. at 733, 121 P.3d at 1032).

The appeals officer concluded that Jason's injury did not arise out of or in the course of his employment. Because judicial review is limited to the appeals officer's final written decision, NRS 616C.370(2), "this court's role is identical to that of the district court." *Bob Allyn Masonry v. Murphy*,

124 Nev. 279, 282, 183 P.3d 126, 128 (2008) (internal quotation marks omitted). The reviewing court must affirm if the appeals officer applied the law correctly and the facts reasonably support the decision. *See* NRS 233B.135; *Bob Allyn*, 124 Nev. at 282, 183 P.3d at 128. We review the appeals officer's view of the facts deferentially, NRS 233B.135(3), but decide questions of law independently. *Star Ins. Co. v. Neighbors*, 122 Nev. 773, 776, 138 P.3d 507, 510 (2006). Questions of law include questions of statutory interpretation. *Id.*

In analyzing whether Jason's death occurred in the course of employment, the appeals officer applied the "going and coming" rule, which "preclud[es] compensation for most employee injuries that occur'" away from the workplace (for instance, when the employee is commuting to or from work). *See Bob Allyn*, 124 Nev. at 287, 183 P.3d at 131 (alteration in original) (quoting *Cotton*, 121 Nev. at 399, 116 P.3d at 58). "This rule frees employers from liability for the dangers employees encounter in daily life" when they are beyond the reach of their employers' control. *Cotton*, 121 Nev. at 399-400, 116 P.3d at 58. This general rule, however, does not apply to "traveling" employees—those "whose work *entails travel away from* the" workplace by definition. 2 Arthur Larson, Lex K. Larson & Thomas A. Robinson, *Larson's Workers' Compensation Law* § 25.01, at 25-2 (2019) (emphasis added). Rather, "in the majority of jurisdictions," and under Larson's rule, traveling employees are "within the course of their employment continuously during the trip, except when a distinct departure on a personal errand is shown." *Id.*

This court has not addressed the traveling employee rule. The Bumas posit that the NIIA statutorily adopts the traveling employee rule, citing NRS 616B.612(3): "Travel for which an employee receives wages

shall, for the purposes of [the NIIA], be deemed in the course of employment." *See Jourdan v. State Indus. Ins. Sys.*, 109 Nev. 497, 501, 853 P.2d 99, 102 (1993) (recognizing that NRS 616B.612(3), formerly numbered NRS 616.270(2), does not apply in the context of a non-traveling employee who receives a stipend to cover the cost of his daily commute). They argue that Jason's death was in the course of employment under this statute because he received a salary to travel to solicit business on Miller Heiman's behalf.[1] They argue that the appeals officer erred by failing to apply this statute to their claim. They also argue that, to the extent there are any exceptions implicit in the rule under NRS 616B.612(3), none of those exceptions applies here. In the Bumas' view, Jason's short ATV ride with his associate, with whom he was staying to prepare for their joint presentations early the next morning, was not an unreasonable departure from the course of his employment, but was instead akin to a walk around hotel grounds while traveling on business. Miller Heiman argues that, even if Jason was in the course of employment as a traveling employee, his injury did not arise out the employment.

### A.

The Bumas are correct that NRS 616B.612(3) creates a traveling employee rule. Commonly understood, "travel" naturally encompasses a range of activities incidental to the physical act of moving

---

[1]The Bumas are correct that Jason received "wages [for]" his travel under NRS 616B.612(3). Under *Mensah v. CorVel Corp.*, "wages," as used throughout the NIIA and its accompanying administrative code, is not so inflexible as to exclude an employee's salary. *See* 131 Nev. 594, 596-97, 356 P.3d 497, 498-99 (2015) (holding that "wages" broadly "means the amount of money that an employee receives for the time the employee worked") (citing NRS 608.012 (defining wages)); *see also* NAC 616C.423(j) (2019) (including salary in the calculation of average monthly wages).

from one place to another. This understanding underpins "[t]he rationale for . . . extended coverage" for traveling employees under workers' compensation law: "that when travel is an essential part of employment, the risks associated with the necessity of eating, sleeping, and ministering to personal needs away from home are an incident of the employment even though the employee is not actually working at the time of injury." *Ball-Foster Glass Container Co. v. Giovanelli*, 177 P.3d 692, 696 (Wash. 2008).

A "[traveling] employee may indeed have a choice" of where to stay, but "that is not the point." 2 Larson's, *supra*, § 25.02, at 25-2. "The point is that there is no choice but to live [*somewhere* while] away from home." *Id.* For that reason, a traveling employee is entitled to expanded coverage for travel-related injuries. There is no choice but for traveling employees to face hazards away from home in order to tend to their personal needs, "including sleeping, eating, and seeking fresh air and exercise," and reasonably entertaining themselves, on their work trips. *Ball-Foster*, 177 P.3d at 701; *see also* 2 Larson's, *supra*, § 25.02, at 25-4 n.12 ("A motel is the place of employment of a traveling employee.") (internal quotation marks omitted). That said, "the traveling employee doctrine does not require coverage for every injury." *Ball-Foster*, 177 P.3d at 697. "The problem is to define a principle which will tell us where the line is to be drawn." 2 Larson's, *supra*, § 20.01, at 20-2.

Traveling employees are deemed in their employers' control, as a practical matter, for the duration of their trips. Several courts have hence simplified the traveling-employee inquiry (i.e., whether a traveling employee's injury is ultimately compensable under workers' compensation) to a question of general reasonableness. *See, e.g., Bagcraft Corp. v. Indus. Comm'n*, 705 N.E.2d 919, 921 (Ill. App. Ct. 1998) (applying rule covering

employees under workers' compensation throughout their work trips for all reasonable and foreseeable activities). "A general reasonableness standard without a finding of a connection to the employee's work," however, "would go too far in covering the social and recreational activities of traveling employees." *Ball-Foster*, 177 P.3d at 698. This court has consistently held that an employee must "establish more than merely being at work and suffering an injury in order to recover" workers' compensation under the NIIA. *Mitchell v. Clark Cty. Sch. Dist.*, 121 Nev. 179, 182, 111 P.3d 1104, 1106 (2005) (quoting *Rio Suite Hotel & Casino v. Gorsky*, 113 Nev. 600, 605, 939 P.2d 1043, 1046 (1997)). We extend this reasoning to the rule for traveling employees under NRS 616B.612(3). While NIIA coverage is broader for a traveling employee because of the risks associated with travel away from home, *Ball-Foster*, 177 P.3d at 701, a traveling employee nonetheless may not recover for injuries sustained while on a personal errand amounting to a distinct departure from his or her employer's business. *See* Larson's, *supra*, § 25.01, at 25-2. The "distinct departure" exception to the traveling employee rule comports with Nevada's requirement that, to be covered by workers' compensation, the injury arise out of the employment.

1.

The exception in Larson's traveling employee rule for distinct departures on personal errands is implicit in the text of NRS 616B.612(3). This court has recognized that employees on special errands/missions may deviate from the course of their employment. *See, e.g., Bob Allyn*, 124 Nev. at 289, 183 P.3d at 133; *Heidtman v. Nev. Indus. Comm'n*, 78 Nev. 25, 29, 368 P.2d 763, 765 (1962). And the "traveling employee may depart on a personal errand just like any other type of employee." *Ball-Foster*, 177 P.3d

SUPREME COURT
OF
NEVADA

(O) 1947A

8

at 697. We accordingly align the inquiry under NRS 616B.612(3) with Larson's traveling employee rule. *Cf. Neighbors*, 122 Nev. at 779-80, 138 P.3d at 512 (relying on Larson's in interpreting NRS 616B.033(2)); *Heidtman*, 78 Nev. at 32, 368 P.2d at 767 (quoting Larson's).

Consistent with the statutory text and Larson's treatise, under NRS 616B.612(3), a traveling employee is in the course of employment continuously for the duration of the trip, excepting the employee's distinct departures on personal errands. To determine whether a traveling employee left the course of employment by distinctly departing on a personal errand, the inquiry focuses on whether the employee was (a) tending reasonably to the needs of personal comfort, or encountering hazards necessarily incidental to the travel or work; or, alternatively, (b) "pursuing . . . strictly personal amusement ventures." *Ball-Foster*, 177 P.3d at 697. "The focus is on the nature of the activity" and the activity's purpose, considered in the context of the work and the trip, "rather than the [travel] status of the employee." *LaTourette v. Workers' Comp. Appeals Bd.*, 951 P.2d 1184, 1188 (Cal. 1998). The cases of distinct departures on personal errands tend to involve a personally motivated activity that takes the traveling employee on a material deviation in time or space from carrying out the trip's employment-related objectives. *See, e.g., Fleetwood Enters., Inc. v. Workers' Comp. Appeals Bd.*, 37 Cal. Rptr. 3d 587 (Ct. App. 2005) (concluding that injury was not compensable under traveling employee rule where claimant was injured in a car accident after extending his stay in Europe by three days for "additional sightseeing in Italy" following the completion of the business purpose of the trip); *E. Airlines v. Rigdon*, 543 So. 2d 822 (Fla. Dist. Ct. App. 1989) (denying benefits to flight

Supreme Court
OF
Nevada

(O) 1947A

9

attendant on a 24-hour layover who was injured skiing at a lodge 58 miles from hotel).

A personally motivated activity is therefore not necessarily dispositive by itself. For instance, under the personal comfort rule, an employee remains in the course of employment during personal comfort activities unless the departure from the employee's work-related duties "is so substantial that an intent to abandon the job temporarily may be inferred or the method chosen" to minister to one's personal comfort "is so unusual and unreasonable that the act cannot be considered incidental to the course of employment." *Ball-Foster*, 177 P.3d at 700. Generally, "[t]he personal comfort doctrine applies to such acts as eating, resting, drinking, going to the bathroom, smoking, and seeking fresh air, coolness, or warmth." *Id.* The class "of activities covered by the personal comfort doctrine depends on the particular circumstances of employment" and, in general, "[a] traveling employee is entitled to broader coverage" under the personal comfort rule than would be a nontraveling employee. *Id.* at 701.

Accordingly, traveling employees may generally tend to their reasonable recreational needs during downtime without leaving the course of employment under this standard. *See, e.g., id.* at 701-02 (affirming award of benefits where traveling employee was injured "taking a Sunday stroll to the park on his single day off"); *see also, e.g., Gravette v. Visual Aids Elecs.*, 90 A.3d 483 (Md. Ct. Spec. App. 2014) (reversing denial of benefits where an off-duty traveling employee injured his pelvis when he slipped and fell while dancing in a nightclub at the hotel he was staying at for his employer's benefit, even though he was not at the nightclub at the employer's request or for the employer's benefit); *Proctor v. SAIF Corp.*, 860 P.2d 828, 830-31 (Or. Ct. App. 1993) (reversing denial of benefits where traveling employee

drove 15 miles away from conference center to a gym and was injured there while playing basketball); *CBS, Inc. v. Labor & Indus. Review Comm'n*, 579 N.W.2d 668 (Wis. 1998) (affirming award where traveling employee, a CBS employee hired to assist CBS's television coverage of the 1994 Winter Olympic Games, injured his knee while skiing on his day off). However, recreational activity that is unreasonable in light of the total circumstances of the trip may constitute a distinct departure on a personal errand.

### 2.

As noted, to be compensable under the NIIA, a traveling employee's injury must have arisen out of the employment. *See Cotton*, 121 Nev. at 400, 116 P.3d at 58. This requirement is consistent with the applicable statutory text, caselaw from other jurisdictions, and Larson's rule for traveling employees. *See* NRS 616B.612(3) (specifying when travel is "in the course of" employment, but not addressing when travel-related injuries "arise out" of the employment); *Ball-Foster*, 177 P.3d at 698 (stating generally that, to be compensable, a traveling employee's "injury must have its origin in a travel related risk"); 2 Larson's, *supra*, § 25.01, at 25-2 (stating generally that, for traveling employees, their "injuries arising out of the necessity of sleeping in hotels or eating in restaurants away from home are usually held compensable").

Our caselaw establishes three general categories of risk applicable to all employee injuries—employment risk, personal risk, and neutral risk. *See Baiguen*, 134 Nev. at 600, 426 P.3d at 590 (citing *Rio All Suite Hotel & Casino v. Phillips*, 126 Nev. 346, 351-53, 240 P.3d 2, 5-7 (2010)). In general, injuries from employment risks arise out of the employment, *id.*, as does an injury due to a neutral risk if the increased-risk test is satisfied, *see id.* at 601, 426 P.3d at 591. Injuries due to purely

SUPREME COURT
OF
NEVADA

(O) 1947A

personal risks generally do not arise out of the employment. *See also id.* (adopting a mixed-risk test applicable to injuries caused by a personal risk and an employment risk).

We hold that this category-based approach applies to traveling employees, though we clarify that risks necessitated by travel—such as those associated with eating in an airport, sleeping in a hotel, and reasonably tending to personal comforts—are deemed employment risks for traveling employees. But purely personal risks—such as a cardiac arrest, the risk of which was not aggravated by the conditions of the travel or employment—remain non-compensable under the NIIA. *See, e.g., LaTourette,* 951 P.2d at 1189 ("It follows that [traveling employees] are also subject to the general rules governing injury from a non-occupational disease."). Additionally, neutral risks that traveling employees may encounter are compensable only if the increased-risk test is met. *Cf. Baiguen,* 134 Nev. at 601, 426 P.3d at 591.

## B.

Both the appeals officer and district court decided compensability based on three main facts: (1) "there were no company events scheduled for the day of the accident"; (2) "Buma was not meeting with clients until the following day"; and (3) "Buma was not required to ride the ATV for work purposes." However significant in the non-traveling-employee context, these facts are not outcome-determinative under NRS 616B.612(3), the statutory rule for traveling employees. The first and second factual findings do not speak to the reality that Jason was *required* to be in the Houston area *for work* and that, to get there in time to make the scheduled joint presentation with Michael, Jason needed to arrive a day ahead of time. As for the third factual finding, it begs the outcome-

determinative question: whether Jason's ATV outing *with his business associate/co-presenter while on a business trip* amounted to a "distinct personal departure on a personal errand."

The appeals officer's decision does not cite NRS 616B.612(3), but it does make passing reference to Larson's traveling employee rule, albeit in confusing fashion. First, the decision deems the traveling employee rule not applicable; then the decision states conclusorily that "[t]he ATV ride was clearly a distinct departure on a personal errand." The former conclusion cannot be squared with NRS 616B.612(3) and is erroneous as a matter of law. The latter statement, while a permissible conclusion after a full and fair hearing, appears influenced by extraneous considerations: specifically, the hearing officer's explanation, three sentences later, that "[Jason] was not under his employer's control while at his friend's ranch." Such analysis ignores reality—that Jason was on a business trip—and the law: A traveling employee is under his employer's control for the duration of his or her business trip, NRS 616B.612(3).

Review for substantial evidence presupposes a full and fair proceeding, which in turn presupposes correct application of law. *Revert v. Ray*, 95 Nev. 782, 786-87, 603 P.2d 262, 264-65 (1979). The correct legal principles should have guided the inquiry towards the facts made relevant by those principles. *Cf. Bower v. Harrah's Laughlin, Inc.*, 125 Nev. 470, 491, 215 P.3d 709, 724 (2009) (noting that, in the summary judgment context, "[t]he substantive law determines which facts are material"), *modified on other grounds by Garcia v. Prudential Ins. Co. of Am.*, 129 Nev. 15, 293 P.3d 869 (2013). We therefore vacate the district court's order

SUPREME COURT
OF
NEVADA

(O) 1947A

denying the Bumas' petition for judicial review, with instructions to remand the matter to the appeals officer to conduct a hearing for additional fact-finding, to be guided by the traveling employee rule and its exception for distinct personal errands as set out in this opinion.

_____, J.
Pickering

We concur:

_____, C.J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

SUPREME COURT
OF
NEVADA

(O) 1947A